THE STATE *ex rel.* HARRIS v. HERRMANN, *Appellant.*

**Constitutional Law**: SPECIAL LEGISLATION : CLASSIFICATION BY POPU-
LATION—BY OTHER CHARACTERISTICS : JUDICIAL NOTICE. The Nota-
ries Act of 1881 is, both by its title and its first section, limited in
its application to "all cities having a population of 100,000 inhab-
itants or more." The 4th section provides that "the office of any
notary public in such a city holding a commission bearing date
prior to the passage of this act, and whose term of office as such
notary public has not expired at the time this act becomes a law,
shall be abolished at the expiration of ten days after the taking
effect of this act."

*Held*, 1st, that the court would take judicial notice that the city
of St. Louis was the only city in the State having 100,000 inhab-
itants at the time of the passage of the act, or which, by the usual
increase of population, could be expected to have that number by
the time the act should take effect; 2nd, that the 4th section, being
applicable only to notaries "in such city," was special legislation
and, therefore, unconstitutional; 3rd, that it was also special be-
cause it applied only to a particular class of notaries, viz: those
whose commissions bore date prior to the passage of the act and
had not expired when the act took effect.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

This was a proceeding by way of information in the nature of a *quo warranto,* filed by the State through the circuit attorney, at the March term, 1881, of the St. Louis court of appeals. The information charged that the defendant had usurped the office of notary public within and for the city of St. Louis, and prayed judgment of ouster. In his answer the defendant set up that on the 22nd day of August, 1878, being legally qualified, he was duly appointed and commissioned by the Governor of this State to said office for a term of four years from said date, which date had not yet expired. To this answer the relator demurred, on the ground that the same did not state facts sufficient to show a valid cause why the said defendant exercised said office of notary public, in view of the act of the general assembly of the State of Missouri, approved March 24th, 1881, entitled "An act to regulate the appointment of notaries public in all cities having a population of 100,000 inhabitants, or more, and to vacate the offices of all notaries," etc. The demurrer was sustained, and judgment of ouster rendered against the defendant, who thereupon appealed to this court. The case was argued by counsel in this court, and the judgment of the court of appeals was affirmed; but upon motion of the appellant the court ordered a re-argument upon the single point stated in the opinion.

*Marshall & Barclay* for appellant.

Law being made theoretically, "not for a day, but for all time," a statute applicable to cities of certain population is a general law when it establishes a rule for the prospective government or regulation of all such cities as may, in the course of time, reach the prescribed population;

but where the statute obviously acts only on a present state of facts in "such cities" and cannot by possibility apply to other cities that may attain, in future, such population, it is local, special and void. *Comm. v. Patton*, 88 Pa. St. 260; *Scowden's Appeal*, (Pa. S. C. Dec., 1881,) 7 South. L. Rev. 921; *State ex rel. v. Hammer*, 42 N. J. L. 439; *Devine v. Cook*, 84 Ill. 590 : *Earle v. Board*, 55 Cal. 489; *McGill v. State*, 34 Ohio St. 228; *Klokke v. Dodge*, 14 Chic. Leg. News 147; *McConihe v. State*, 17 Fla. 238; *State v. Mitchell*, 31 Ohio St. 592; *Robinson v. Perry*, 17 Kas. 248; *Pittsburgh Assessor's case*, 2 Cent. L. J. 306; *Fields v. Commissioners*, 36 Ohio St. 480. Again, the constitution of Missouri contemplates and permits a classification by population to meet an existing state of facts for certain purposes, namely, to provide for and regulate fees of local officers, and to incorporate cities and towns. Const. 1875, art. 9, §§ 12, 17. Upon the principle, *expressio unius est exclusio alterius*, this permission implies a prohibition for all other purposes. *Klokke v. Dodge, supra; Worcester Bank v. Cheney*, 94 Ill. 430; *City v. Laughlin*, 49 Mo. 559; *Maguire v. Bank*, 62 Mo. 346. A statute, such as this section 4, which selects particular individuals, (namely, notaries whose commissions are dated prior to a date named in the act,) from a general class, (namely, all notaries in said jurisdiction,) and subjects them to peculiar rules from which the others in the same class are exempt, is a special law and void. Cooley Const. Lim., p. *391; *State v. Tolle*, 71 Mo. 645; *Ex parte Westerfield*, 55 Cal. 550; *Smythe v. Monticello*, 12 Chic. Leg. News 12; *State v. Riordan*, 24 Wis. 484. Furthermore, it selects one class of the old notaries and vacates their commissions, while it gives other old notaries their full term of office. That is, those appointed under the old law, between March 24th, 1881, and June 26th, 1881, the date when the new law took effect, may hold their offices unmolested; but those appointed prior to March 24th, 1881, under the same old law, must vacate their offices. It thus makes one rule for one officer and a

different rule for another officer of the same general class, qualified under the same law. This is obviously special legislation, forbidden by the constitution. *Nevada v. Mining Co.*, 15 Nev. 234; *Ex parte Westerfield*, 55 Cal. 550; *s. c.*, 36 Am. Rep. 47; *Montgomery v. Com.*, 91 Pa. St. 125.

*C. P. Ellerbe* for respondent..

The principle announced in *State v. Tolle*, 71 Mo. 650, viz., that " a statute which relates to persons or things, as a class, is a general law, while a statute which relates to particular persons or things of a class, is special, and that classification does not depend on numbers," is decisive of this case.

Section 4 operates on all subjects of a particular class, viz : on the offices of all notaries, in the cities included in the classification, whose commissions bear date prior to the passage of the act, and whose terms should not have expired at the time of its taking effect. The idea of the appellant seems to be that at the time when the statute should go into effect there would be but one city in the State large enough to embrace the subjects in the classification. But such idea is founded upon a repudiation of the doctrine of classification asserted by this court. This court will not, except upon the clearest grounds and in manifest cases, overturn legislation as unconstitutional. Every intendment is to be made in favor of the validity of an act; and no presumptions are to be indulged against its validity. Therefore, instead of presuming that, at the date at which the act in question would take effect, there would be no city in the State other than the city of St. Louis, within the terms of the classification, that is, no other city having 100,000 inhabitants, the presumption, if any, would be the reverse. *State v. Tolle*, 71 Mo. 650; *Wheeler v. Philadelphia*, 77 Pa. St. 338; *Kilgore v. Magee*, 85 Pa. St. 411. But the question does not come to this, for the classification of cities, by population, being general, and not special;

as we have seen, and, therefore, valid, although there may be but one city in the class, (*Kilgore v. Magee, supra,*) it follows that all legislation touching the subjects of legislation within any class, though it contain but one city, is general legislation, not special, though applying to the like subject nowhere else.

Now, the subjects of legislation under the operation of section 4, are a certain class of offices, viz : Offices of all notaries of cities having 100,000 inhabitants, whose commissions ante-date the passage of the act, and whose terms of office did not expire until after the act went into operation. Here is a classification of the subjects of the act, and the act applies to those subjects all over the State alike, wherever they are to be found. The section is, therefore, general and not special. It comprehends the whole of a proper class.

The cities are classified under the act by population, the subjects for the operation of the act by the dates of commissions and the terms of office. The only question remaining is, whether the latter classification is by arbitrary terms or by terms related to the objects and purposes of the statute. If the former, that is, if the facts upon which the classification is made to depend are arbitrary and taken merely for the purpose of evading the inhibition of the constitution, and not essential to the objects of the law, then we concede the classification would be void—but the contrary if essential to the objects of the law. *Wheeler v. Philadelphia, supra; Kilgore v. Magee, supra; State v. Parsons,* 40 N. J. L. 1, 8; 42 N. J. L. 649; *McConihe v. State,* 17 Fla. 238.

The object of the act was, for purposes of public utility, to concentrate into the hands of a sufficiently small number of officers the notarial business of populous cities to make the business so far compensating as to secure for this service efficient, able and reliable officers, it being notorious that the compensation, before the act, arising out of the great division of the business because of the great

numbers of notaries, was not sufficient to secure for that service such officers as the public interests demand. This was the mischief to be overcome by the law, and we think it cannot be disputed that the abolition and vacation of the offices then existing under commissions running until after the act went into effect, were directly related to the objects and purposes of the act, and were essential to those purposes and objects. Such being the case, the classification made by the 4th section, by the dates of commissions in reference to the date of the passage of the act, and the date of the expiration of the terms of office under such commissions, in relation to the time the act went into effect, was not arbitrary, and constituted a lawful classification, and hence the 4th section is not within the inhibitory clause of the constitution—is not a special or local law.

*A. Hamilton* also for respondent.

There are no words in this 4th section which limit the application of the law to one (or two) cities only, which now exist, and, therefore, preclude its application to any other city, now or hereafter, which may have that population. It is certainly true that the act can now, in fact, operate only on the city of St. Louis, and can never operate to abolish offices and commissions in any future city, and for the plain reason that there would be none to be abolished, the laws creating them having been repealed; that is, there would be no subjects or persons in existence falling within the scope of the act. But it by no means follows that the law would not be applicable to all subjects and persons within its provisions, if such subjects or persons existed. The act itself contains no terms of limitation on its applicability to all cities within the State which belong to the class designated. And the case simply is, that the section operates on such subjects as fall within the scope of its provisions, and does not operate on any

other subjects; and this is equally true of nearly every statute in the State.

*D. H. McIntyre*, Attorney General, also for the respondent.

SHERWOOD, C. J.—This cause has been re-argued upon the single point of the constitutionality of the 4th section of the notary act. Sess. Acts 1881, p. 172. That act is as follows:

An act to regulate the appointment of notaries public in all cities having a population of 100,000 inhabitants or more, and to vacate the offices of all notaries public in office in such cities ten days after the taking effect of this act.

Be it enacted by the General Assembly of the State of Missouri, as follows:

Section 1. The Governor shall appoint and commission, in all cities having a population of 100,000 inhabitants or more, one notary public only to every 3,500 inhabitants in said cities: Providing, that notaries, when receiving their commissions as such, and before qualifying as such, pay into the treasury of the State, to the use of the common school fund, the sum of $25 each.

Section 2. The notaries public so appointed and commissioned shall be men of good moral character, and shall possess all the qualifications and exercise all the duties heretofore provided by law for notaries public, and shall give bond in the sum of $10,000; such bond to be given under the provisions of section 6463 of chapter 134 of the Revised Statutes of the State of Missouri.

Section 3. The last national census preceding each appointment shall be taken as a basis upon which to make said appointment of notaries public, and the Governor shall only appoint and commission persons as notaries public, when it shall appear to him that the number of notaries public, in all cities having a population of 100,000 inhab-

itants, is less than the number authorized to be appointed by this act.

Section 4. All acts and parts of acts inconsistent with this act are hereby repealed, and the office of any notary public in *such city* holding a commission bearing *date prior* to the passage of this act, and whose *term* of office as such notary public has not expired *at the time this act becomes a law*, shall be abolished at the expiration of ten days after the taking effect of this act; and every person who shall act or assume to act as notary public after his office shall be thus vacated, or after his term shall have expired, or without legal authority to act as notary public, shall be guilty of a misdemeanor.

Approved March 24th, 1881.

If section 4 is to be regarded as a *special* law, then, of course, it falls within the prohibition of the constitution. If a *general* law, then our judgment affirming that of the St. Louis court of appeals must stand. The point thus presented for our consideration, the difference between a general and a special law, has been extensively discussed and frequently adjudicated in those states possessing constitutions substantially identical with our own. We will now advert to and quote from some of the leading decisions, and endeavor to deduce the principles which they announce.

In *State ex rel. v. Hammer*, 42 N. J. L. 435, a law was assailed on the ground of being a special law, and the supreme court, in discussing this point, say: "It does not profess to be such, for its title is, 'An act relating to the assessment and revision of taxes in cities in this state.' But this descriptive generality is immediately dwarfed and curtailed by the initial words of the body of the enactment, for it at once proceeds to declare 'that in any city of this state where a board of assessment and revision of taxes now exists, such board,' etc., the effect being to restrict the operation of the law to those certain localities that were possessed, *at the time of the passage of the enact-*

*ment,* of the body of officers so designated. The evidence before us shows that there were only two localities so circumstanced, the one being the city of Elizabeth and the other the city of Newark. The result, therefore, is, that the act was intended to apply and that *it does and must ever apply* to these two cities alone, and that the legal effect of this law, as now constituted, is the same as though it had, in express terms, declared that it was not to be operative through the state at large, but in the cities of Elizabeth and Newark only. Can a law thus designed and framed stand the constitutional test?" And the law was held special and, therefore, void.

That case is not, as counsel assert, in "direct conflict" with that of *Van Riper v. Parsons,* 40 N. J. L. 1, for Beaseley, C. J., delivered the opinion of the court in each instance, and in commenting on the case last cited, said: "But a single argument has been presented in its support, which is that this act is general in its terms and embraces all of a group of objects having characteristics sufficiently marked and distinguished to make them a class by themselves; and these qualities, it is contended, bring this case within the requirements of the constitution, as the same is expounded in the case of *Van Riper v. Parsons,* 11 Vroom 1. But I do not understand that the decision thus invoked will bear the construction thus put upon it. It does not undertake, as I understand it, to lay down any abstract rule on this subject, but the expressions quoted are employed in reference to the facts then under adjudication. Plainly a law may be general in its provisions, and may apply to the whole of a group of objects having characteristics sufficiently marked and important to make them a class by themselves, and yet such a law may be in contravention of this constitutional prohibition. Thus, a law enacting that in every city of the state in which there are ten churches there should be three commissioners of the water department, with certain prescribed duties, would present a specimen of such a law, for it would sufficiently

designate a class of cities, and would embrace the whole of such class; and yet it does not seem to me that it could be sustained by the courts. If it could be so sanctioned then the constitutional restriction would be of no avail, as there are few objects that cannot be arbitrarily associated, if all that is requisite for the purpose of legislation is to designate them by some quality, no matter what that may be, which will so distinguish them as to mark them as a distinct class."

So, in Pennsylvania, Mr. Justice Paxson, who delivered the opinion of the court in *Wheeler v. Philadelphia*, 77 Pa. St. 338, also delivered the opinion of the court in *Commonwealth v. Patton*, 88 Pa. St. 258, and consequently must be presumed entirely familiar with any points of similarity or dissimilarity between the two cases. In the latter, the act of assembly of 18th of May, 1878, was brought under discussion. That act provided, among other things, "that in all counties of this commonwealth where there is a population of more than 60,000 inhabitants, and in which there shall be any city incorporated at the time of the passage of this act, with a population exceeding 8,000 inhabitants, situate at a distance from the county seat of more than twenty-seven miles by the usually traveled public road, it shall be the duty," etc., and the learned judge in discussing the act, said: " The vital and controlling point in the case is whether the said act is obnoxious to the constitution as being special legislation within the terms of the constitutional prohibition. It was contended for the relators that the case came within the ruling in *Wheeler v. The City*, 27 P. F. Smith 338, and that the act was general, inasmuch as it applies to certain counties in the state as a class. A comparison of the act in question with the act of 23rd May, 1874, under which the case of *Wheeler v. The City* arose, will show some marked features of dissimilarity. The act of 1874 provided for the classification of the cities of the commonwealth. For the exercise of certain corporate powers, and having respect to the number, charac-

ter, power and duties of certain officers thereof, the cities then in existence or *thereafter to be created* in this common-wealth were divided into three classes. It is true that in that classification the city of Philadelphia was the only city of the first class. But as was said in *Wheeler v. The City*, legislation is not intended for the present merely; it provides for and anticipates the wants of the future. The act of 1874 classifies cities by their population. The act of April 18th, 1878, can hardly be said to be a classifica-tion of counties. It is true that it speaks of all counties of more than 60,000 inhabitants. But it goes on to say, 'and in which there shall be any city incorporated at the time of the passage of this act, with a population exceed-ing 8,000 inhabitants, situate at a distance from the county seat of more than twenty-seven miles by the usual public traveled road.' *This is classification run mad;* why not say all counties named Crawford, with a population exceeding 60,000, that contain a city called Titusville, with a popula-tion of over 8,000, and situated twenty-seven miles from the county seat? Or, all counties with a population of over 60,000, watered by a certain river or bounded by a certain mountain? There can be no proper classification of cities or counties except by population.       *      *
The learned judge finds the fact that Crawford county is the only county in the state to which the act of April, 1878, *can apply at the present time.* Said act *makes no provision for the future*, in which respect it differs from the act of 1874, which in express terms provides for future cities and the expanding growth of those now in existence. *That is not classification* which merely designates *one* county in the com-monwealth and makes *no provision* by which *any other county* may, by reason of its increase of population *in the future*, come within the class." And the act of 1878 was held unconstitutional. In a more recent case in Pennsylvania the doctrine of *Patton's case* has been re-affirmed. *Scowden's Appeal*, 7 South. L Rev. 921.

In Illinois an act of the legislature was "by its terms

limited in its operation to counties containing over 100,000 inhabitants," and the supreme court of that state, in discussing that act, say : "Its very terms preclude it from having any application to any county except the county of Cook, for we take judicial notice that no other county in the state contains over 100,000 inhabitants, nor can it be expected by any ordinary influx or increase of population that any other county will have that population within the brief period fixed for the duration of this law, viz : within a period of six years from the time the act should take effect. No express words that could have been used by the general assembly could limit the application of this law to the county of Cook more absolutely and definitely than those employed." *Devine v. Cook,* 84 Ill. 590. And in a still later case the same doctrine has been re-asserted. *Klokke v. Dodge,* 14 Chic. Leg. News 147.

In Ohio also similar views are expressed. Thus in *State ex rel. v. Mitchell,* 31 Ohio St. 592, it is said : "It is true the act in question is in the form, in a sense, of a general law. But as was said in the case of the *State ex rel v. The Judges,* 21 Ohio St. 11, the constitutionality of an act is to be determined by *its operation,* and not by the mere form it may be made to assume. The act is entitled, 'An act to provide for the improvement of streets and avenues in certain cities of the second class,' and by the first section it is made applicable to 'cities of the second class, having a population of over 31,000, at the last federal census.' Columbus is the only city in the state having the population named at the last federal census, and the act, therefore, applies alone to that city, and can never apply to any other. The effect of the act would have been precisely the same if the city had been designated *by name* instead of by the circumlocution employed." And the act was held obnoxious to constitutional objections. Counsel for Herrmann cite other authorities which fully support those already cited, and there seems to be an entire unanimity in the later authorities in holding that laws such

as have been already quoted and discussed fall under the ban of constitutions similar to our own.

The question then is, does section 4 of the notary act, in the light of the authorities we have quoted, present objectionable features similar to those acts of other states heretofore noticed? We are all of the opinion that it does, and these are reasons therefor: The notary act, it will be observed, both by its title and its first section, applies only to "all cities having a population of 100,000 inhabitants or more;" and section 4 repeals all inconsistent acts and abolishes " the office of any notary public in *such city* holding a commission *bearing date prior to the passage of this act*, and whose term of office as such notary public has not expired at the time this act becomes a law." Now, "courts will take notice of whatever ought to be generally known within the limits of their jurisdiction," and public matters affecting the government of the country. 1 Greenleaf Ev., § 56, and cases cited. Among these matters are the official records of the census, as to localities within their jurisdiction; and will take judicial notice that but one city in the State contains more than a certain number of inhabitants. *Devine v. Cook, supra.* Taking judicial notice then, as we must, of the official records of the census, so far as relating to the State, we find that St. Louis was the only city in the State possessing 100,000 inhabitants *at the time of the passage of the act*, or which by the usual increase of population could be expected to have that number when the act took effect. This then being ascertained, the city of St. Louis, under the authority cited, is to be regarded as the city intended, and the only city intended, as much so as if *called by name.* But if St. Louis had been thus directly designated no one would have the temerity to contend that such a law could withstand the charge of being a special law.

But the section under discussion is to be regarded as a special law for the additional reason that it can by no sort of possibility apply, except as to an *existing state of facts*—

except as to those notaries whose commissions *bear date prior* to the passage of this act. All that is necessary to do in order to ascertain what notaries in the city of St. Louis are ousted by the 4th section is to examine the *date of their commission.* If such a law is worthy of the title of a *general law*, then assuredly one would be equally deserving of such title, which should designate notaries by the distance which they reside from the court house, and their stature, or the color of their hair or other individual peculiarities. It is obvious beyond question that section 4 applies only to a certain city, to-wit: St. Louis, and only to a certain class therein, to-wit: those notaries commissioned prior to March 24th, 1881, and whose commissions do not expire before June 26th, 1881. Thus bringing that section within the definition and distinction given and made by Dwarris between *general* and *public* acts, and such as are *special* or *private.* "That public acts relate to the public at large, and private acts concern the particular interests or benefit of certain individuals, or of particular classes of men." Potter's Dwarris, 52. Judge Cooley says: "A statute would not be constitutional * * which should select particular individuals for a class or locality and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same class or locality are exempt. * * Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free government." Cooley Con. Lim., 391. Section 4 does just this prohibited thing. It selects particular individuals, *i. e.*, notaries whose commissions bear certain dates, from a general class, *i. e.* all notaries in said jurisdiction, and subjects them to peculiar rules, from which all others in the same class are ex-

empt.   Such a law cannot be otherwise than special, and can justly bear no other name or designation.

It is claimed by counsel for relator that *State v. Hammer*, *supra*, asserts a doctrine different from that approved by this court in *State v. Tolle*, 71 Mo. 645.   There is no warrant for such assertion.   We still adhere to the doctrine there approved, " that a statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class, is special." This definition is virtually the same as the one we have already announced, and shows very conspicuously that section 4 belongs to that category of statutes which we have just seen relates to " particular persons   *   *   of a class."   But the statute under discussion in *Tolle's case* differs very widely from the one we are discussing.   The section passed upon in that case was section 320, Revised Statutes 1879, which made provision that " in all cities having a population of more than 100,000 inhabitants, a board consisting of the judges of the circuit court of such cities, or a majority of the same, shall on or before the 1st day of November, 1879, and *every two years* thereafter, cause to be published," etc.   That section related to " persons or things as a class," and, therefore, filled the definition of a general law.   It did not single out and relate to " particular persons or things of a class."   And more than that it would only operate, and was only intended to operate *in the future*, and its general rule would operate as fast as cities having a population of 100,000 inhabitants should give occasion to apply the law.   In the case at bar, on the contrary, it is simply imposssible that section 4 should ever operate except upon an *existing state of facts*, except as to " particular persons of a class," and that class residents of a certain city, to-wit : St. Louis.   Its operation is centered upon those persons, and ceases when they are ousted according to its terms.   The section in question may be a general law *in form*, but courts of justice cannot permit constitutional prohibitions to be evaded by dressing up

*special laws* in the garb and guise of *general* statutes. In discussing the section in question it has not been our purpose to say aught against the validity of other sections of the notary act. We may remark, however, that an act may be partly void and partly valid if the parts are severable.

For the reasons aforesaid, the judgment of ouster is reversed and the writ dismissed. All concur.