RUTHERFORD, *Appellant*, v. HEDDENS.

**Constitution**: SPECIAL LAW. The act of the general assembly, approved March 28th, 1881, authorizing cities acting under special charters, and containing more than 30,000 and less than 50,000 inhabitants, to establish a system of sewerage and to construct, establish and keep in repair sewers, culverts and drains, is not a special law, and as such, prohibited by the constitution.

*Appeal from Buchanan Circuit Court.*—HON. W. H. SHERMAN, Judge.

REVERSED.

*H. K. White* for appellant.

The act in question is constitutional. *State ex rel. v. Herman*, 75 Mo. 340; *Kilgore v. Magee*, 85 Pa. 411. The constitution is not a grant of powers to the legislature, but its province is to bind and restrain the power which the legislature possesses, independent of the limitations in it. Cooley on Const. Lim., (4 Ed.) p. 107; *C. & St. L. R. R. Co. v. Warrington*, 92 Ill. 157; *Richards v. Raymond*, 92 Ill. 612. Unless the act in question clearly conflicts with the provisions of the constitution, it cannot be declared void. *St. Louis Co. v. Griswold*, 58 Mo. 175; *State v. Able*, 65 Mo. 357.

*Ramey & Brown, Strong & Mosman, Spencer & Hall* for respondent.

The act in question is a special and local law, and as such is unconstitutional. Const., art. 12, § 2; art. 9, § 7; R. S. 1879, art. 1, chap. 89.

HENRY, J.—The only question submitted for our consideration is the constitutionality of an act of the general assembly, approved March 28, 1881. Sess. Acts of 1881, pages 69, 70, 71. It is entitled: "An act authorizing cities acting under special charters, and containing more than

30,000 inhabitants, to establish a system of sewerage, and to construct, establish and keep in repair, sewers, culverts and drains." The body of the act authorizes the mayor and council of all cities in this State having, and such as may hereafter contain, more than 30,000, and less than 50,-000 inhabitants, to establish a system of sewerage, and to hold, and to construct, and keep in repair, sewers, culverts and drains, when the same may be deemed necessary to convenience and health.

This is a suit against defendant to collect a special tax assessed against his property for sewerage work done in front of it, under an ordinance passed in conformity with said act. Respondent contends that the act of 1881 is special legislation, and, therefore, forbidden by section 53, article 4 of the constitution, which declares that : " The general assembly shall not pass any local or special law : * * Regulating the affairs of counties or cities ; * * incorporating cities, towns, or villages, or changing their charters, * * or creating corporations, or amending, renewing, extending or explaining the charter thereof." By section 7 article 9, the general assembly is required to provide, by general law, for the organization and classification of cities and towns, the number of classes not to exceed four, and to define the power of each class, and to give to each member of a given class, the same powers, and subject it to the same restrictions as are given to, and imposed upon the other members of that class. Also, to make provision by general law, whereby any city, town, or village, existing by virtue of a special or local law, may elect to become subject to the general law.

The legislature has discharged its duty under that section, but the city of St. Joseph has not elected to become subject to the general law, as is the case with many other cities, towns and villages in the State. It is contended by respondent that while in this condition, the charter of the city of St. Joseph can never be amended, not under the general laws, because they can be made applicable only to the four classes

established by the constitution and the law, and not by a special law, because the enactment of such laws is forbidden by the constitution. It is assumed that the constitution is hostile to existing special charters, and that by the sections above mentioned, it was the intention to force all cities, towns and villages to surrender their respective charters, and come under the general law. We can gather from the instrument no such intent. If such hostility to special charters was entertained by the convention which framed the constitution, it could have been easily expressed by a requirement, that all cities, towns and villages in the State, having special charters, should be subject to the provisions of the general law, which the legislature was required to pass for their classification. Unquestionably the charter of the city of St. Joseph cannot be amended by a special law, but, is the act of 1881 a special law?

If we correctly construe the opinion delivered by this court, in the case of the *State ex rel. v. Herrman*, 75 Mo. 340, and the cases there cited, the principles they announce uphold the act of 1881 as general, and not special legislation. The case first cited is the *State v. Hammer*, 42 N. J. Law 435. A law of that State provided that: "In any city where a board of assessment and revision of taxes now exists, such board shall," etc. There were but two cities in the State having such a board, and the court observed that: "The result, therefore, is, that the act was intended to apply, and that it does, and must ever apply to those two cities alone, and the legal effect of the law as now constituted, is the same as though it had in express terms, declared that it was not to be operative through the State at large, but only in the cities of Elizabeth and Newark." In *Wheeler v. Philadelphia*, 77 Penn. St. 338, it was contended that an act of the legislature was in conflict with a provision of the constitution similar to ours, with respect to special legislation, because there was but one city in the State, to which it could then possibly apply, but the court observed that: "The argument is plausible, but unsound. It is

true, the only city in the State, at the present time, containing a population of 300,000, is the city of Philadelphia. It is, also, true, that the city of Pittsburg is rapidly approaching that number, if it has not already reached it, by recent enlargements of its territory. Legislation is intended not only to meet the wants of the present, but to provide for the future. It deals, not with the past, but, in theory, at least, anticipates the needs of a State, healthy with a vigorous development. It is intended to be permanent." Because the law was applicable to any city that might thereafter contain a population of 300,000, it was held constitutional; and in the *Com. v. Patton*, 88 Penn. St. 258, the same learned judge who delivered the opinion in *Wheeler v. Philadelphia*, speaking of a law of that State enacted in 1878, observed that it made no provision for the future, in which respect it differed from the act of 1874, considered in the *Wheeler case*, under which future cities, and those then in existence, on reaching the given population, could acquire the powers, and obtain the benefits, conferred by the act. In that respect, the law considered in the case of the *Com. v. Patton*, is similar to that which was passed upon in *Devine v. Cook*, 84 Ill. 590, which, by its terms, as construed by the supreme court of that State, was limited in its operation, to counties containing over 100,000 inhabitants, and, in that feature is similar to the act construed by this court in the *State ex rel. v. Herrman*, supra.

These cases are all cited in the opinion delivered in that case, and the review of those adjudications concludes with the following remark: " Counsel for Herrmann cite other authorities which fully support those already cited, and there seems to be an entire unanimity in the later authorities in holding that laws such as have been already quoted and discussed, fall under the ban of constitutions similar to our own;" and that the laws there held as "falling under that ban," are those which were restricted in their application to one or more towns or cities, with no provision by which those subsequently attaining the number of in-

habitants specified in the act, might enjoy the benefits, or powers conferred by the act. The following language is conclusive: " The notary act, it will be observed, both in its title and in its first section, applies only to, " all cities having a population of 100,000 inhabitants or more," and " taking judicial notice then as we must, of the official records of the census, so far as relating to the State, we find that St. Louis was the only city in the State possessing 100,000 inhabitants, *at the time of the passage of the act*, or which, by the usual increase of population, could be expected to have that number when the act took effect. This then being ascertained, the city of St. Louis, under the authority cited, is to be regarded as the city intended, and the only city intended, as much so as if *called by name."* The court, it will be observed, construed the act as embrac- ing only such cities as contained 100,000 inhabitants when it took effect.

By the act of 1881, however, not only to all cities then having a population exceeding 30,000 and less than 50,000 was given the authority to establish a sewerage system, but upon any or all such as might thereafter contain such population, the same authority is conferred, and we are of the opinion that such legislation is not special legislation within the meaning of the constitution.

The circuit court held otherwise, and sustained a de- murrer to plaintiff's petition and rendered a judgment against him, which is reversed, and the cause is remanded. All concurring except Hough, C. J., absent.