JAMES L. CLARKSON, Appellant, V. GUERNSEY FURNI-
TURE COMPANY ET AL, Respondents.

22a 109
31a  86
22  109
63  418

St. Louis Court of Appeals, May 4, 1886.

1.  JUSTICES—JURISDICTION.—A justice's jurisdiction in the city of St.
    Louis, in all civil cases, except landlord's summons cases, is co-ex-
    tensive with the boundaries of the city.

2.  ———— CONSTITUTIONAL LAW— SPECIAL LAWS.—A legislative act,
    changing the jurisdiction of justices in cities containing 100,000 in-
    habitants, is not a special law within the meaning of section sixty-
    three, of article four, of the constitution.

3.  ———— APPELLATE JURISDICTION.—A question which is so well set-
    tled by binding judicial decisions that it is not debatable, is not one
    which will oust the courts of appeals of appellate jurisdiction.

4.  JUDGMENTS—SATISFACTION—LEVY—MARRIED WOMEN—HUSBAND AND
    WIFE.—A levy upon personalty and a release thereof upon a claim
    of exemptions by the wife, on the ground that the husband has ab-
    sconded, is not a satisfaction of the judgment, and will not pre-
    vent a subsequent levy upon the debtor's real estate.

APPEAL from the St. Louis Circuit Court, SHEPARD
BARCLAY, Judge.

*Affirmed.*

GEORGE D. REYNOLDS, for the appellant.

N. O. GRAY, for the respondents.

THOMPSON, J., delivered the opinion of the court.

This action is brought to enjoin the levy of an exe-
cution upon certain real estate of the plaintiff, which ex-
cution issued upon a transcript of the judgment of a jus-
tice of the peace, filed in the office of the clerk of the
circuit court, in a case in which the Guernsey Furniture
Company was the plaintiff, and the plaintiff in the pres-
ent action was the defendant. The principal ground on
which the injunction was asked was, that the judgment

of the justice was void, by reason of the fact that the justice of the peace, before whom the action was brought, was a justice in and for the fifth judicial district of the city of St. Louis, whereas the defendant was served in the first judicial district of the city of St. Louis, by the delivery of a copy of the summons, at his residence in such district, to a member of his family over fifteen years of age there found. It was admitted at the trial that the fifth judicial district of St. Louis does not adjoin the first judicial district, and that the plaintiff resided in neither of these districts. The plaintiff in the present action, in point of fact, at the time of the service of the magistrate's summons, had separated from his wife, had left his residence in the first judicial district of St. Louis and had gone to live at Arcadia, in Iron county, in this state. Judgment in that action was rendered against him by default and he did not know that the action had been commenced against him until a considerable time after the rendition of the judgment.

I.   Upon these facts, the plaintiff in the present action is entitled to have the execution of the judgment enjoined under the decision of this court in *Bornschein v. Finck* (13 Mo. App. 120), and under the decision of the supreme court in *Fare v. Gunter* (80 Mo. 522), unless the law prescribing the place of bringing suits before justices of the peace in the city of St. Louis has been changed since the rendition of the decision in *Bornschein v. Finck*. It is contended on behalf of the defendant that the law was changed by the act of March 31, 1883, passed soon after the decision last named. This act reads as follows:  "Justices of the peace in all cities in this state having a population of one hundred thousand or more, shall have civil jurisdiction in all cases, except landlord's summons cases, co-extensive with the limits or boundary lines of such city, in the maximum amounts as now prescribed by statute."  The act also has another section repealing all acts and parts

of acts inconsistent with this act.    Prior to the passage
of this act there was a general statute, which has been on
the statute books of this state from the earliest times,
and which, as embodied in the present Revised Statutes,
reads as follows: "Every justice of the peace shall
have jurisdiction co-extensive with the county for which
he shall be elected or appointed." Rev. Stat., sect. 2838.
The next section in the present Revised Statutes (Rev.
Stat., sect. 2839), imposes a distinct limitation upon the
meaning of this section, by prescribing in what township
actions before a justice of the peace shall be brought.
Under this section, so far as it applies to the present
case, the action was required to be brought, either
before a justice of the peace of the township wherein the
defendant resided, or in some adjoining township.    This
section has always been understood to apply to the city
of St. Louis, and the so-called "judicial districts" of
the city of St. Louis are townships within its meaning.
The decision of this court in *Bornschein v. Finck, supra,*
proceeded upon this ground and necessarily involved
this conclusion.    This conclusion, also, is unavoidable in
view of the provision of section 3126, Revised Statutes,
that: "Whenever the word 'county' is used in any
law, general in its character to the whole state, the
same shall be construed to include the city of St. Louis,
unless such construction be inconsistent with the evi-
dent intent of such law, or of some law specially appli-
cable to such city." It is equally unavoidable, in view of
the provisions of section 2806, Revised Statutes, in
which the word "township" is used interchangeably
with the word "district" in reference to the magisterial
districts of the city of St. Louis.    The question, then,
is, whether the legislature, by the act of 1883, above
quoted, intended to change this rule.    The contention
on behalf of the plaintiff is, that, whatever may have
been intended by those who procured the passage of the
act, the language of the act itself, properly construed,
does not import an intention to change the previously

existing law. It is argued, that because there is a similar provision, giving justices jurisdiction co-extensive with the county, in the Revised Statutes, which applies generally to justices throughout the state, the legislature, in enacting this statute of 1883, must be understood to have intended nothing more than, out of abundant caution, to extend the same provision to the city of St Louis. We are bound to suppose that the legislature, in passing an act of this kind, meant *something*, and we know that there never was any substantial doubt about justices of the peace in the city of St. Louis having jurisdiction analogous to, and equally extensive with, that possessed by justices of the peace in the counties of the state. The construction contended for on behalf of the plaintiff would, therefore, give to the act of 1883 no meaning whatever. It is true that statutes relating to the same subject must be construed *in pari materia ;* but it does not follow from this that the act of 1883 is to have no greater force or effect than would be attained by transplanting the provision of section 2838, Revised Statutes, into the city of St. Louis. The provisions are not identical in their language. Section 2838, Revised Statutes, is drawn in the most general terms, and the learned counsel for the plaintiff justly states its meaning to be that justices of the peace are to have jurisdiction co-extensive with the county, in the sense that their subpœnas run to the whole county, that their executions are enforceable throughout the whole county, and that they are peace officers of the whole county. But it does not in any manner touch upon or determine the question, within what township actions commenced before justices of the peace shall be brought. The act of 1883, however, does not stop by saying, as section 2838, Revised Statutes, does, that justices of the peace in cities having one hundred thousand inhabitants, or more, shall have jurisdiction co-extensive with the city, but it says that they "shall have civil jurisdiction in all cases, except landlord's summons

cases, co-extensive with the limits or boundary lines of such city, in the maximum amounts as now prescribed by statute." This language can mean nothing less than that they are to have jurisdiction of civil actions in the maximum amounts now prescribed by law, throughout the entire limits of the city within and for which they hold their respective offices, with the exception stated. It would be absurd to specify by using the word "civil," by excluding the cases of landlords' summons, and by speaking of "the maximum amounts now prescribed by statute," unless the legislature intended to be understood as giving justices the jurisdiction named. The construction contended for by the plaintiff, instead of transferring to the city the jurisdiction which justices possess in the country, would, by implication, narrow their jurisdiction in the city to a smaller jurisdiction than they possess in the country.

II. The proposition that the statute of 1883 is unconstitutional, because it is a special law regulating the practice or jurisdiction before justices of the peace, within the meaning of section fifty-three, of article four, of the constitution, prohibiting the enacting of special laws on certain enumerated subjects, is not regarded as fairly debatable. If it were, it would be our duty to transfer the case to the supreme court for want of jurisdiction. But several decisions of the supreme court show that this point is not well taken. *The State ex rel. v. Tolle*, 71 Mo. 645; *The State ex rel. v. Herrmann*, 75 Mo. 340, 354; *Rutherford v. Heddens*, 82 Mo. 388. If we could be required to transfer a case to the supreme court for want of jurisdiction, by the act of counsel in thrusting into their brief a constitutional question, which is well and firmly settled by the only tribunal having the power to settle it, our jurisdiction might be ousted, and the supreme court correspondingly overburdened in a very large number of cases which it was intended by the

constitution and the recent amendment that we should have the power to determine.

III. The point, that the levy which was first made upon the personal property of the defendant was improperly released, and that the levy was a satisfaction of the judgment, is clearly not well taken. We can not see that it was improperly released. It was claimed by the wife of the defendant in the execution (plaintiff in the present action), as exempt property, on the ground that the husband had absconded; the circumstances of the case made this claim apparently a good one, and brought the case within the provision of section 2348, Revised Statutes. The sheriff thereupon demanded an indemnifying bond, under the sheriff and marshal's act applicable to the city of St. Louis (2 Rev. Stat. 1554), and the plaintiff in the execution refused to give such bond. This warranted the sheriff in discharging the levy in order to protect himself from liability to an action which Mrs. Clarkson might have brought against him, under the terms of section 2348, Revised Statutes. The case of *The State ex rel. v. Koontz* (83 Mo. 323), to which we are cited by the learned counsel for the plaintiff, on this point, has no application, because that case arose outside of the city and county of St. Louis, and there was no statute authorizing an indemnifying bond in attachment cases, similar to our sheriff and marshal's act, which is local to the city and county of St. Louis. Outside of this territorial jurisdiction, the statutes provide no such indemnity to levying officers in attachment cases. *The State to use v. Fitzpatrick*, 64 Mo. 185, 190.

The judgment of the circuit court must be affirmed. All the judges concur.