# THE STATE v. ROBERT MIKSICEK, Appellant.

### Division Two, February 12, 1910.

1. **CONSTITUTIONAL LAW: Right to Contract: Bakers: Hours of Labor.** Section 10088, Revised Statutes 1899, providing that no employee shall be required, permitted or suffered to work in a biscuit, bread, pastry or cake bakery or other bakery or confectionery establishment in this State more than six days in one week, said week to commence at a stated time *post* meridian on Sunday," is unconstitutional and void, as violative of the Fourteenth Amendment of the Federal Constitution. It interferes with the right of contract between employer and employee concerning the number of hours the employee may labor in the employer's bakery. Under that amendment no State can deprive any person of life, liberty or property without due process of law, and the right to purchase or sell labor is a part of the liberty protected thereby.

2. ————: ————: ————: ————: **Police Regulation.** Said statute cannot be upheld as a police regulation. It is not valid as a labor law. It cannot be held that the public health is conserved by the number of hours a baker works per week; if the statute can be upheld as a health provision, it must be because it pertains alone to the health of the individual engaged in the occupation of a baker. But there is nothing in his work that makes it more unhealthy than that of many other kinds of labor. There is no other theory upon which it can be considered as a police regulation, and it is therefore an unreasonable exercise of the police power.

3. ————: **Bakeries: Discrimination Among Members of a Class.** A statute which requires "all rooms or buildings occupied as biscuit, bread or cake bakeries" to be "constructed with air-shafts, windows or ventilating pipes sufficient to insure ventilation," and fixes a penalty for its violation, but does not require pie, or pastry or cracker or confectionery bakeries to be so constructed, is violative of section 53, article 4, of the Missouri Constitution, which forbids the Legislature to grant to any corporation, association or individual any special or exclusive right, privilege or immunity; and it is also violative of the Fourteenth Amendment to the United States Constitution in denying to bakeries the equal protection of the law.

225 Sup—36

Appeal from St. Louis Court of Criminal Correction.
—*Hon. Wilson A. Taylor,* Judge.

REVERSED.

*Zachritz & Bass* for appellant.

(1) The first count of the information herein is bottomed upon Sec. 10088, R. S. 1899. This act violates our State and Federal Constitutions; therefore, is void, being repugnant to Art. 2, sec. 4, Constitution of Missouri; art. 2, sec. 30, Constitution of Missouri, and art. 14, sec. 1, Amendment to the Constitution of the United States; State v. Tie and Lumber Co., 181 Mo. 536; Leach v. Tie and Lumber Co., 111 Mo. App. 650; State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State v. Westerfield, 55 Cal. 550; Low v. Printing Co., 41 Neb. 127; Lochner v. New York, 198 U. S. 45; Adair v. U. S., 208 U. S. 161; Mueller v. Oregon, 208 U. S. 412; In re Parrot, 1 Fed. Rep. 481; Tiedeman on State and Federal Control, p. 943; Peo v. Williams, 189 N. Y. 131. (2) The motion to quash the second count of the information should have been sustained. The second count of the information rests upon Sec. 10089, R. S. 1899. This section violates sec. 53, art. 4, Constitution of Missouri. Also the 14th Amendment to the Constitution of the United States. It is special legislation. State ex rel. Herman, 75 Mo. 340; State v. Julow, 129 Mo. 163; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 96.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) Both counts of the information herein follow the language of the statute and fully inform appellant of the crimes charged, and are sufficient in form and substance. R. S. 1899, sec. 10088; State v. Edgen, 181 Mo. 592; State v. Miller, 190 Mo. 449; State v.

Wilkerson, 170 Mo. 184; State v. Kreuger, 134 Mo. 274; State v. Davis, 70 Mo. 467; State v. Kesslering, 12 Mo. 565; Parks v. State, 159 Ind. 211; State v. Runzi, 105 Mo. App. 319; Commonwealth v. Campbell, 22 Pa. Sup. Ct. 98; Whitlock v. Campbell, 89 Va. 337; Antle v. State, 6 Tex. App. 202; State v. Edmonds, 127 Iowa 333; 30 Cyc., p. 1565. (2) The sections in question are presumed to be constitutional until the contrary is clearly shown. Ex parte Loving, 178 Mo. 203; State ex rel. v. Pike County, 144 Mo. 277; State v. Cantwell, 179 Mo. 261; State v. Aloe, 152 Mo. 477; State ex rel. v. Railroad, 48 Mo. 471; Atchison v. Andrews, 174 U. S. 96. (3) Where there is doubt as to the constitutionality of an act it will be resolved in favor of the validity of the act. Ex parte Loving, 178 Mo., supra; State v. Cantwell, 179 Mo., supra; County v. Griswold, 58 Mo. 192; State v. Able, 65 Mo. 357. (4) Sec. 10088, R. S. 1899, is a valid law as a police regulation, and on the facts as shown by this record, the judgment of the lower court should be affirmed. State v. Cantwell, 179 Mo. 245; Cantwell v. Mo., 199 U. S. 642; Jacobson v. Mass., 197 U. S. 11; Holden v. Hardy, 169 U. S. 366; Muller v. Oregon, 208 U. S. 412; State v. Muller, 48 Ore. 252; People ex rel. v. Metz, 193 N. Y. 148; State v. Concrete Mfg. Co., 34 Mont. 570; 63 Central Law Journal, p. 163. The facts of this case clearly distinguish it from the case of Lochner v. New York, 198 U. S. 45, relied upon by appellant. See following additional authorities: People ex rel. Harry v. Graut, 179 N. Y. 417; Ex parte Boyce, 27 Nev. 299; Tenement House Dept. v. Moeschen, 179 N. Y. 325; In re Board, 36 Wash. 449; State v. Vickers, 186 Mo. 103; Ex parte Kair, 28 Nev. 127. (5) Sec. 10089, R. S. 1899, is a reasonable and valid law as a police regulation, and should be upheld. We have been unable to find where a single law requiring proper ventilation of bakeshops has been held invalid. The prosecution under the second count

should be upheld as a health regulation, and is clearly within the police power of the State to enact and enforce. Authorities, supra.

FOX, J.—The offenses of which the defendant was convicted are misdemeanors; however, the cause was properly sent to this court on the ground that certain constitutional questions are involved, which were properly raised and presented to the trial court.

On January 30, 1908, the assistant prosecuting attorney of the St. Louis Court of Criminal Correction, filed in said court his second amended information in this cause. In the first count of said amended information the defendant is charged with the violation of section 10088, Revised Statutes 1899, in that he suffered and permitted certain named employees to work in a cake and bread bakery and confectionery establishment belonging to defendant and located at 2005 South Eleventh street, in the city of St. Louis, for more than six days during a period of one week, contrary to the provisions of said section of the statute. In the second count of said information defendant is charged with a violation of section 10089, Revised Statutes 1899, in that defendant owned and occupied a certain cake and bread bakery, located at ·2005 South Eleventh street in the city of St. Louis, which said cake and bread bakery was not constructed with air shafts, windows and ventilating pipes sufficient to insure the proper ventilation of said bakeshop, as required by that section of the statute.

During the course of the opinion all the provisions of both sections of the statute upon which the information and judgment rest will be fully reproduced.

The defendant filed his motion to quash the information on the ground that it violated both the Federal and State Constitutions. We do not deem it essential to reproduce the numerous grounds alleged in the

motion to quash and the particular constitutional provisions both of the State and the Federal Constitutions, which it is claimed that the provisions of the statute, upon which this information is based, violate. During the course of the opinion we will make such reference to the constitutional provisions as may be necessary in order to present our views upon the questions involved. The motion to quash was by the trial court overruled, to which action of the court the defendant duly preserved his objections and exceptions. A plea of not guilty to the charge as contained in the information was entered by the defendant and the trial proceeded, neither party requiring a jury, before the court sitting as a jury.

We shall not undertake to set forth in detail the testimony introduced upon the trial. It is sufficient to say, as applicable to the first count, that the State introduced testimony which tended to establish the allegations in the information. The testimony as applicable to the second count is very unsatisfactory, and while it may be true, as a matter of fact, that the building occupied for the bakery of the defendant was not constructed with air shafts, windows and ventilating pipes sufficient to insure ventilation, yet the testimony by the inspectors fails to make a clear showing that the building was not so constructed. They testified about there being two small windows, but no inquiry was made of the witnesses as to the air shafts or ventilating pipes, and while that testimony would be of a negative character, yet, under the provisions of section 10089, it was essential to show that the building was not constructed with air shafts, windows or ventilating pipes sufficient to insure ventilation. In fact there is an entire absence of any testimony upon the subject of whether or not this building was so constructed as to insure ventilation. An inquiry of that kind was made of one of the inspectors and the testimony was objected to and the objections sustained;

however, with the views we entertain of the provisions of section 10089, as before stated, we deem it unnecessary to detail the testimony introduced upon the second count of the information as applicable to that section.

The defendant did not introduce any evidence upon the trial of this cause.

At the close of the evidence upon the part of the State the defendant requested an instruction in the nature of a demurrer to the evidence, as follows: "Now comes the above named defendant at the close of the State's case, and moves the court to find the defendant not guilty under the evidence and charge herein." This motion or instruction was by the court overruled. The defendant requested numerous other declarations of law, which were by the court overruled.

The cause being submitted to the court, the defendant was found guilty upon both counts of the information and his punishment assessed at a fine of $10 upon each count. Timely motions for new trial and in arrest of judgment were filed, which were by the court overruled and the defendant prosecuted his appeal to this court. Through some inadvertence the record in the trial court was first transmitted to the St. Louis Court of Appeals. Subsequently that court transferred the cause to this court for the reason that they were without jurisdiction to dispose of it, and it is now pending before us for consideration.

## OPINION.

It is insisted by learned counsel for appellant that the section of the statute upon which the first count of the information is predicated is unconstitutional and void. In other words, it is contended that this section of the statute is violative of both the State and Federal Constitutions. [Constitution of Missouri, art. 2, secs. 4 and 30; Amendments to the Constitution of the United States, art. 14, sec. 1.]

The solution of this proposition necessitates a careful consideration of the provisions of section 10088, Revised Statutes 1899, upon which the prosecution in this cause is based. This section provides: "That no employee shall be required, permitted or suffered to work in a biscuit, bread, pastry or cake bakery or other bakery or confectionery establishment in this State more than six days in one week, said week to commence at a stated time, 'post meridian,' on Sunday, and to terminate not later than the corresponding time on Saturday of the same week—excepted from this rule may be the time on Sunday for setting the sponges for the night's work following. No person under the age of sixteen years shall be employed in any bakeshop between the hours of nine o'clock at night and five o'clock in the morning."

The proposition with which we are confronted as to the constitutionality of this section was in judgment before the Supreme Court of the United States in Lochner v. New York, 198 U. S. 45, upon a statute substantially the same as the statute upon which the prosecution in the case at bar rests. Section 110 of the New York statute provided: "No employee shall be required or permitted to work in a biscuit, bread or cake bakery or confectionery establishment more than sixty hours in any one week, or more than ten hours in any one day, unless for the purpose of making a shorter work day on the last day of the week; nor more hours in any one week than will make an average of ten hours per day for the number of days during such week in which such employee shall work."

The indictment in the New York case charged the defendant with a violation of the provisions of that section. It was averred that the defendant "wrongfully and unlawfully required and permitted an employee working for him in his biscuit, bread and cake bakery and confectionery establishment, at the city of Utica, in this county, to work more than sixty hours

in one week." There was a conviction of the defendant in the trial court and upon appeal to the Supreme and Appellate Courts of the State of New York the judgment of conviction was affirmed, and upon appeal to the Supreme Court of the United States the judgment of conviction was reversed. Mr. Justice PECKHAM delivered the opinion of the court. He exhaustively reviewed all the authorities applicable to the proposition with which he was dealing. It was expressly ruled that the statute necessarily interferes with the right of contract between the employer and employees, concerning the number of hours in which the latter may labor in the bakery of the employer. It was held in that case that "the general right to make a contract in relation to his business is part of the liberty of the individual protected by the Fourteenth Amendment of the Federal Constitution. [Allgeyer v. Louisiana, 165 U. S. 578.] Under that provision no State can deprive any person of life, liberty or property without due process of law. The right to purchase or to sell labor is part of the liberty protected by this amendment, unless there are circumstances which exclude the right."

The Supreme Court of the United States in that case held that section 110 of the New York statute, as heretofore indicated, which, we repeat, is substantially the same as our statute upon that subject, was not a valid exercise of the police power by the State. In discussing that proposition the learned justice said:

"It must, of course, be conceded that there is a limit to the valid exercise of the police powers by the State. There is no dispute concerning this general proposition. Otherwise the Fourteenth Amendment would have no efficacy and the legislatures of the States would have unbounded power, and it would be enough to say that any piece of legislation was enacted to conserve the morals, the health or the safety of the

people; such legislation would be valid, no matter how absolutely without foundation the claim might be. The claim of the police power would be a mere pretext—become another and delusive name for the supreme sovereignty of the State to be exercised free from constitutional restraint. This is not contended for. In every case that comes before this court, therefore, where legislation of this character is concerned and where the protection of the Federal Constitution is sought, the question necessarily arises: Is this a fair, reasonable and appropriate exercise of the police power of the State, or is it an unreasonable, unnecessary and arbitrary interference with the right of the individual to his personal liberty or to enter into those contracts in relation to labor which may seem to him appropriate or necessary for the support of himself and his family? Of course the liberty of contract relating to labor includes both parties to it. The one has as much right to purchase as the other to sell labor.

"This is not a question of substituting the judgment of the court for that of the legislature. If the act be within the power of the State it is valid, although the judgment of the court might be totally opposed to the enactment of such a law. But the question would still remain: Is it within the police power of the State? and that question must be answered by the court.

"The question whether this act is valid as a labor law, pure and simple, may be dismissed in a few words. There is no reasonable ground for interfering with the liberty of person or the right of free contract, by determining the hours of labor, in the occupation of a baker. There is no contention that bakers as a class are not equal in intelligence and capacity to men in other trades or manual occupations, or that they are not able to assert their rights and care for themselves without the protecting arm of the State, interfering with their independence of judgment and of action. They are in no sense wards of the State. Viewed in the

light of a purely labor law, with no reference whatever to the question of health, we think that a law like the one before us involves neither the safety, the morals nor the welfare of the public, and that the interest of the public is not in the slightest degree affected by such an act. The law must be upheld, if at all, as a law pertaining to the health of the individual engaged in the occupation of a baker. It does not affect any other portion of the public than those who are engaged in that occupation. Clean and wholesome bread does not depend upon whether the baker works but ten hours per day or only sixty hours a week. The limitation of the hours of labor does not come within the police power on that ground. . . . We think the limit of the police power has been reached and passed in this case. There is, in our judgment, no reasonable foundation for holding this to be necessary or appropriate as a health law to safeguard the public health or the health of the individuals who are following the trade of a baker. If this statute be valid, and if, therefore, a proper case is made out in which to deny the right of an individual, *sui juris,* as employer or employee, to make contracts for the labor of the latter under the protection of the provisions of the Federal Constitution, there would seem to be no length to which legislation of this nature might not go. The case differs widely, as we have already stated, from the expressions of this court in regard to laws of this nature, as stated in Holden v. Hardy, 169 U. S. 366, and Jacobson v. Massachusetts, 197 U. S. 11.

"We think that there can be no fair doubt that the trade of a baker, in and of itself, is not an unhealthy one to that degree which would authorize the legislature to interfere with the right to labor, and with the right of free contract on the part of the individual, either as employer or employee. In looking through statistics regarding all trades and occupations it may be true that the trade of a baker does not appear to be

as healthy as some other trades, and is also vastly more healthy than still others. To the common understanding the trade of a baker has never been regarded as an unhealthy one. Very likely physicians would not recommend the exercise of that or of any other trade as a remedy for ill health. Some occupations are more healthy than others, but we think there are none which might not come under the power of the legislature to supervise and control the hours of working therein, if the mere fact that the occupation is not absolutely and perfectly healthy is to confer that right upon the legislative department of the government. It might be safely affirmed that almost all occupations more or less affect the health. There must be more than the mere fact of the possible existence of some small amount of unhealthiness to warrant legislative interference with liberty. It is unfortunately true that labor, even in any department, may possibly carry with it the seeds of unhealthiness. But are we all, on that account, at the mercy of legislative majorities?''

The case at bar falls directly within the rules announced in the Lochner case, and this case being one in the form presented to this court of which the Supreme Court of the United States would have jurisdiction, the principles announced by the Supreme Court of the United States furnish a rule to govern as well as to guide; hence, it follows that the Lochner case must be treated as decisive of the proposition as applicable to section 10088.

In the subsequent cases of Adair v. United States, 208 U. S. 161, and Muller v. Oregon, 208 U. S. 421, while the same question was not in judgment before the court as in the case at bar or in the case of Lochner v. New York, supra, yet a brief reference was made to the case of Lochner v. New York, and it is made manifest that the Supreme Court of the United States have not in any way receded from the rules and prin-

ciples announced in the Lochner case. As applicable
to the proposition now under discussion see the case
of State v. Missouri Tie & Timber Co., 181 Mo. 536;
State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo.
163; Ex Parte Westerfield, 55 Cal. 550.

We see no necessity for further pursuing the
questions as to the constitutionality of section 10088.
As before stated, the Supreme Court of the United
States with a statute before it substantially the same
as our statute, has clearly settled that proposition.

## II.

This brings us to the consideration of the proposi-
tion arising upon the second count of the information.
At the very threshold of the discussion of the ques-
tions respecting the second count of the information
we find such count very inartistically drawn. Section
10089, upon which the second count is based, provides
that "all rooms or buildings occupied as biscuit, bread
or cake bakeries shall be drained and plumbed in a
manner to conduce to the proper and healthful sanitary
condition thereof, and constructed with air-shafts, win-
dows or ventilating pipes, sufficient to insure venti-
lation." Manifestly the requirements of air-shafts,
windows or ventilating pipes have application and ref-
erence to the rooms or buildings occupied as bakeries.
In other words, under the provisions of that section
there is a clear distinction between the bakery itself
and the rooms and buildings occupied for the purpose
of conducting the bakery business. It will be noted
that the second count of the information charges that
the defendant occupied a certain cake and bread bak-
ery; then follows the allegation that said bakery was
not constructed with air-shafts, windows, etc., as re-
quired by the statute.

It is unnecessary, however, with our view of the
law as applicable to that section, to determine the
sufficiency of that count in the information. Manifest-

ly it does not charge the offense in the terms of the statute, or even substantially in the language of the statute.

It will be observed that section 10088, Revised Statutes 1899, an act in reference to bakeries, treats bakeries as a class, which include biscuit, bread pastry or cake bakery or other bakery or confectionery establishment. No one can read the provisions of that section and escape the conclusion that the legislative mind, in the enactment of the law, was specially directed to bakeries as a class, and sought to embrace every feature of the business done by that class; but the defect in the legislation as enacted by section 10089, upon which the second count of the information in the case at bar is predicated, is apparent from the fact that the application of the provisions of that section is limited to biscuit, bread or cake bakeries, and they have no application whatever to pie and pastry bakeries and confectioneries or to cracker bakeries. Section 10088 embraces every line of product in the class of bakeries, and section 10089 only embraces a portion of such line of products; hence, it follows that the law requires sanitation of the buildings and rooms of the bread, biscuit and cake bakeries, but that the proprietors and owners of the buildings of the pie, pastry and cracker bakeries are exempt from its operation.

It is but common knowledge that in large cities pie and pastry bakeries are quite numerous and have many persons in their employ, and the same reasons for keeping the buildings and rooms occupied by that class of bakeries in a proper sanitary condition are as essential as in the rooms and buildings where the product is that of bread, biscuit and cake; and again it will be observed the confectioneries and the cracker bakeries are also exempt from the operation of the provisions of section 10089, which was not true as applicable to the provisions of section 10088.

It is clear from the provisions of section 10089 that there is a discrimination between persons belonging to the same class. As heretofore stated, the class of persons to whom this law was directed is that engaged in the bakery business, and while the provisions of section 10088 clearly indicate that the lawmaking power in the enactment of the law concerning bakeries had in mind every feature of the business and output of the class of business about which they were legislating; yet when we reach section 10089 a discrimination between persons engaged in the same class of business seems to have crept in. In other words, as heretofore stated, the provisions of section 10089 apply only to biscuit, bread or cake bakeries, and have no application to bakeries engaged in the making of pie and pastry or crackers and confectioneries; that is to say, the corporation, association or individual engaged in the bakery business which confines its business to the baking of pies, pastry, crackers or other confectioneries, is exempt from the requirements of section 10089. This discrimination is manifestly in conflict with section 53, article 4 of the Constitution of Missouri, which forbids the Legislature to grant to any corporation, association or individual any special or exclusive right, privilege or immunity, and is also violative of the Fourteenth Amendment to the Federal Constitution in denying the equal protection of the law.

Judge COOLEY, distinguished jurist as well as author, in his Constitutional Limitations (6 Ed.), 556-559, very clearly states the rule as applicable to this subject. It is there said: "A statute would not be constitutional . . . which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. . . . Every one has a right to demand that he be governed by general rules, and a special

statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments.''

We have the rule well settled by this court, speaking through Judge GANTT, in Kansas City v. Grush, 151 Mo. l. c. 135. In discussing this proposition it was there said: ''No doubt exists as to the power of the Legislature or of a special charter to divide the various occupations into different classes, and that a tax upon all persons belonging to one class would not be obnoxious to the Constitution merely because another class was not taxed, but when as in this case the ordinance singles out a part of a legal class, to-wit, merchants, and imposes a burden upon it, and exempts all others of the same class, then those against whom this unjust discrimination is directed may justly complain of the violation of the constitutional guaranty of equality of taxation, and equal protection of the laws.''

In State v. Julow, 129 Mo. l. c. 177, this court, in announcing the rule applicable to the proposition now under discussion, used this language: ''The Legislature may legislate in regard to a class of persons, but they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each. This would be mere arbitrary classification without any basis of reason on which to rest, and would resemble a classification of men by the color of their hair or other individual peculiarities, something not competent for the Legislature to do. [State ex rel. v. Herrmann, 75 Mo. l. c. 353.]''

The rule of construction in this State has been firmly established; in fact, as was said in State v.

Walsh, 136 Mo. l. c. 405, it is so well settled that it admits no contravention,—that is, "that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special. [State ex rel. v. Tolle, 71 Mo. 650; State ex rel. v. Herrmann, 75 Mo. 340; State v. Julow, 129 Mo. 163.]''

In State v. Walsh, 136 Mo. 400, the defendant was convicted of book-making and pool-selling, in violation of section 1, of the Laws of 1895, p. 150. Section 1 upon which the conviction in that case was predicated, in substance made book-making and pool-selling in any room, shed, tenement, tent, booth or building, or any part thereof, within this State, a misdemeanor; but provided that nothing in that section should be so construed as to prohibit pool-selling or book-making on the premises or within the limits or enclosure of a regular race-course on which such contest of speed is had. This court in that case held that law unconstitutional, for the reason that it discriminated in violation of the constitutional provision between persons belonging to the same class. It was said, in announcing the conclusions in the Walsh case, that the law "takes book-makers, pool-sellers and bet-mongers as a class, and divides them into two portions, one of which, to-wit, the portion which assembles *on the premises or within the limits or enclosure of a regular race-course,*' and renders the members of that portion immune from punishment, while another portion of the same genus, book-maker, pool-seller or bet-monger, who pursues his avocation outside or immediately outside of the sacred precincts of 'a regular race-course,' is doomed, for doing the very same things, to fine or imprisonment or both.'' In other words, it was expressly ruled in that case that to certain members of a class the law extended protection and they were immune from punishment for doing certain acts, and that other members of the same class were not

under the protection of the law, and for doing similar acts were liable to fine and imprisonment.

So it may be said in the case at bar as to the provisions of section 10089—those persons engaged in the bakery business who confine their business to the baking of biscuit, bread or cake must comply with the provisions of the section of the statute concerning the sanitary conditions of the rooms or buildings occupied by them in the pursuit of their business, and a failure upon their part to have the buildings or rooms properly drained and plumbed and constructed with air-shafts, windows or ventilating pipes renders them subject to prosecution and conviction, while other members of the same class, that is, such bakeries as make pies, pastry and crackers and confectioneries, are immune from any punishment by reason of their failure to comply with the provisions of section 10089. The discrimination is so apparent in the provisions of this section that if the uniform rules of this court are longer to be regarded as precedents, we see no escape from the conclusion that this section of the statute must be condemned for the reason that it discriminates between persons belonging to the same class.

This court has uniformly upheld all legislation along the line of police regulations, and the regulation of certain business pursuits, which sought to protect the health, the morals and the interests of the public, where such laws were directed to and embraced all persons, associations or corporations belonging to a certain class to whom such laws could reasonably be made applicable; but on the other hand, where a statute, as in the case at bar, so manifestly discriminates between persons or associations belonging to the same class, we have always felt that if the organic law of the State was to be regarded as having any force or vitality, and is longer to furnish any guide to the law-

making power in the enactment of legislation, such statute should be unhesitatingly condemned.

If the bakery business is recognized as an unhealthful pursuit for those who actually engage in the operation of the work, it is not a difficult matter to enact a law for the protection of the health of those engaged in such work by making it applicable to all persons, associations or corporations engaged in the bakery business. In other words, let the law embrace all bakers in a class, covering every feature and character of the output or products of their bakeries.

We see no necessity for further discussing this proposition. In our opinion the sections of the statute upon which this prosecution is based cannot be upheld. They are clearly violative of the constitutional provisions to which we have made reference; hence cannot form the basis of a statute upon which a prosecution can rest.

The judgment of the trial court should be reversed, and the defendant discharged.

All concur.