Murnane v. City of St. Louis.

---

MURNANE, *Appellant*, v. THE CITY OF ST. LOUIS *et al.*

In Banc, June 25, 1894.

1. **Constitution**: MUNICIPAL IMPROVEMENT: SPECIAL LEGISLATION. The Missouri act of March 14, 1893, by the use of terms requiring the whole cost of improvement of streets, etc., to be charged against adjoining property and said cost to be "levied, collected and paid in

Murnane v. City of St. Louis.

the manner and at the time now provided by law or charter of said cities," etc., indicates plainly the intent that said act shall apply only to charters now existing; and hence it is in conflict with the constitutional command against special legislation of that sort.    (SHERWOOD and BURGESS, JJ., *dissenting*).

2.    ——: ——: ——.    The assessment and collection of the cost for street improvements properly belong to municipal affairs, and appertain to the local government of the corporation.

3.    ——: ——: ——.    Every reasonable intendment should be made to support an act of the general assembly, when its constitutionality is questioned; but, if it clearly appears in conflict with the organic law, the courts must so declare.

4.    ——: ——: CLASSIFICATION OF CITIES.    The act of March 14, 1893, purports to create a class of cities having a population of three hundred thousand or over, whereas there are already four classes of general charters for cities, etc., of various sizes, the first class of which consists of those having a population of one hundred thousand or more.    *Held*, that the formation of a new class of cities, within the first class, for strictly municipal objects, is in violation of that section of the constitution which limits the number of such classes to four, and declares that "the power of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."    Const. art. 9, sec. 7.    (Per BARCLAY, BRACE and GANTT, JJ.)

## Appeal from St. Louis City Circuit Court.

REVERSED.

*Leverett Bell* for appellant.

(1)    The act of 1893 in question violates section 7 of article 9 of the state constitution.    1. R. S. pp. 92, 303; Laws, 1893, p. 59; 2 R. S. p. 2123, sec. 18; *State v. Miller*, 100 Mo. 439; *State v. Bell*, 24 S. W. Rep. 765. (2) The act of 1893 in question violates sections 20 to 25 inclusive of article 9 of the state constitution; it invades the right of self government in matters of local concern held by the people of St. Louis under the above constitutional provisions; it is an attempt by the state legislature to direct the disbursement of money

raised by taxation in St. Louis for local municipal purposes; and it is a legislative interference with local matters in St. Louis with which the state has no concern. 2 R. S., sec. 18, p. 2123; 1 R. S., sec. 1140, p. 342; 1 R. S., p. 305; *Ewing v. Hoblitzelle*, 85 Mo. 64; *State v. Miller*, 100 Mo. 439; *State v. R. W. Co.*, 22 S. W. Rep. 910; *State v. Bell*, 24 S. W. Rep. 765; *State v. Field*, 99 Mo. 352.

*W. C. Marshall* for respondent, City of St. Louis.

(1) There is no merit in the contention that the act of 1893 is a special law. Ever since the decision in the case of *State ex rel. v. Hermann*, 75 Mo. 340, the law has been settled in this state that an act, which, by its terms may apply to cities that by increase of population may attain a certain population, is a general and not a special law. *Rutherford v. Heddens*, 82 Mo. 388; *Ewing v. Hoblitzelle*, 85 Mo. 75; *State v. Hayes*, 88 Mo. 347; *State ex rel. v. County Ct.*, 89 Mo. 240. *State ex rel. v. Miller*, 100 Mo. 447; *State v. Bell*, 24 S. W. Rep. 765. (2) There is no merit in the contention that the legislature of Missouri has no power to pass a law which will supersede a charter provision of the city of St. Louis. This has been settled law in this state ever since the decision in the case of *Ewing v. Hoblitzelle*, 85 Mo. 75, which has been reaffirmed by the supreme court in *State ex rel. v. Dolan*, 93 Mo. 467. (3) This leaves only the question of whether the legislature had the power to remove the limitation which the charter of St. Louis provided as to the amount of benefits which could be charged for street improvements. Such charges are not taxes nor are they obnoxious to the constitutional provisions requiring that taxes shall be uniform and equal. *Adams v. Lindell*, 72 Mo. 198; *St. Louis v. Spiegel*, 75 Mo. 145. (4) The nature and power of special tax bills or assessments by a municipal corpora-

tion for improvements can not be regarded in the light of general taxation, and are not considered a burden which every person is placed under by virtue of being a member of the government, but as an equivalent or compensation for the enhanced value which the property derives from the improvement. *Sheehan v. Hospital*, 50 Mo. 155; *Nenan v. Smith*, 50 Mo. 525; *St. Louis v. Clemens*, 52 Mo. 133; *St. Louis v. Allen*, 53 Mo. 44; *Farrar v. St. Louis*, 80 Mo. 379. (5) The court can not undertake to determine the *quantum* of benefit received. Such questions are no longer open in suits on special tax bills. *City v. Rankin*, 96 Mo. 467. The only defense that can be made in such an action is the validity of the assessment and levy; the amount of benefit can not be raised. *City v. Rankin*, *supra.*

*H. A. Clover* and *Ashley C. Clover* for respondent, the Heman Construction Company.

The law is not a special law of the character forbade by the state constitution. The repeated, numerous and recent decisions of this court upon what constitutes a special law which may not be enacted by the general assembly, would seem to foreclose all further discussion of the subject. From the time of the decision of the case of *State v. Tolle*, 71 Mo. 656, down to the time of the decision of the case of *State ex rel. v. Bell*, 24 S. W. Rep. 675, the determinations of this court are quite unanimous to the effect that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and that classification does not depend upon numbers. The decisions of this court (and it is useless to go out of the state for authorities or decisions of the courts of other states on the question) are: *State v. Tolle*, 71 Mo. 656; *State*

*v. Herman,* 75 Mo. 349; *Rutherford v. Heddens,* 82 Mo. 338; *Ewing v. Hoblitzelle,* 85 Mo. 64; *Kelly v. Meeks,* 87 Mo. 396; *State v. Pond,* 93 Mo. 606; *State ex rel. v. Miller,* 100 Mo. 439; *State ex rel. v. Bell,* 24 S. W. Rep. 675; *State ex rel. v. Jackson Co.,* 89 Mo. 237; *Rutherford v. Hamilton,* 97 Mo. 543. In the language of the court of appeals (N. Y.) in case *In re Church,* 92 N. Y. 4: "The force of the law of 1881 is not localized in Kings county and confined to its territory. By its terms it applies to every other county which may prove to be within the constituted class. It is said there is but one such county, and so it was said in *Matter of the N. Y. Elevated R. R.,* 70 N. Y. 328, there was but one elevated railroad. Neither fact at all narrowed the terms of the law. Those terms in each case were broad enough to cover every county in the state if it had the required city."

BARCLAY, J.—This is a suit by Julia Murnane as owner of a lot of land on Evans avenue in St. Louis to enjoin the performance of a contract entered into by the city of St. Louis and a construction company, for the improvement of that avenue, to be paid wholly by special tax bills against the property of plaintiff and other owners of adjacent land.

It appears from the petition that the part of the cost of the improvement which will be chargeable against the plaintiff's property, under the contract mentioned, will amount to more than twenty-five per cent. of the assessed value of her property.

It is not necessary to state the contents of the petition at large for the real issue is one of law, and lies in a small compass.

No point is raised as to the regularity of the steps taken by the municipal authorities in letting the contract, further than that, in so doing, they disregarded

that part of the charter of St. Louis which declares that, whenever the estimated special taxes to be assessed against any property, for the cost of improving a street, shall, in the aggregate, amount to more than twenty-five per cent. of the assessed value of said property, then the assembly shall provide out of the general revenue for the payment of the amount in excess of the said twenty-five per cent. St. Louis charter, art. 6, sec. 18; R. S. 1889, p. 2123, sec. 18.

This appropriation by the municipal assembly was not made in the case at bar, for the reason that the charter provision, just cited, is said to have been repealed, and the city authorized to charge the entire cost of the improvement by special tax bills upon the adjoining property, by virtue of an act of the general assembly of Missouri, approved, March 14, 1893, entitled, "An act relating to the construction of streets, alleys and public highways in cities of this state having three hundred thousand inhabitants or over." Laws, Mo. 1893, p. 59.

The validity of this act, to. repeal the section of the charter above mentioned, is the point of controversy.

In the trial court that issue was raised by demurrer to the petition which the court sustained, and judgment went for defendants accordingly, followed by the present appeal.

No formal questions in relation to the mode of procedure have been started.

Both parties meet the substance of the issue on its merits.

1. The changes sought to be made in the general charter for cities of the first class (sec. 1140, R. S. 1889, identical with that of St. Louis on this point) by the act of 1893, can best be shown by placing their terms in juxtaposition:

Murnane v. City of St. Louis.

CITIES OF THE FIRST CLASS.

Sec. 1140. "The cost of construction of all the foregoing improvements within the city shall be apportioned as follows:

The grading of new streets, alleys, and the making of crosswalks and the repairs of all streets and highways and cleaning of the same, and of all alleys, and crosswalks, shall be paid out of the general revenue of the city; and the paving, curbing, guttering, sidewalks, and the materials for the roadways, the repairs of all alleys and sidewalks, shall be charged upon the adjoining property as a special tax, and collected and paid as hereinafter provided. Whenever the estimated special taxes to be assessed against any property shall, in the aggregate, amount to more than twenty-five per cent. of the assessed value of said property, calculating a depth to such property of one hundred and fifty feet, then the assembly shall provide out of the general revenue for the payment of the amount in excess of the said twenty-five per cent. The board of public improvements shall notify the assembly whenever an ordinance is pending which requires an appropriation out of the general revenue to pay a part of the costs of the improvements therein contemplated."

ACT OF MARCH 14, 1893.

Sec. 1. "In all cities of this state which now have or may hereafter have a population of three hundred thousand inhabitants or over, the whole cost of paving, grading, construction or reconstruction, curbing, guttering, crosswalks, sidewalks and the materials for the roadways of all streets, alleys and public highways hereafter constructed, reconstructed or improved in said cities, and the repairs of all alleys and sidewalks, shall be charged upon the property adjoining such improvement as a special tax, and levied, collected and paid in the manner and at the time now provided by law or charter of said cities for the levy, collection and payment of special tax bills for the street improvements in said cities. The cost of repairs of all streets and highways, and cleaning of the same, and of all alleys and crosswalks, shall be paid out of the general revenue of said cities. The cost of repairs and cleaning of all streets and highways, except boulevards established or to be established by law, and the cleaning of all alleys and crosswalks, shall be paid out of the general revenue of said cities: *Provided,* however, that nothing in this act shall be so construed as to relieve any street railway company from any duties, liabilities or obligations now existing or which may hereafter be imposed.

Sec. 2. All acts and parts of acts, and any provision of the laws or ordinances of said cities, conflicting or inconsistent with the provisions of this act, are hereby repealed."

It will be seen that the act of 1893 not only removes all limitation as to the amount of special taxes for those street improvements which are chargeable upon adjacent property; but it would fain add to those charges several items, now payable out of the general revenue of "such cities," namely: the cost of grading streets, and of constructing and reconstructing crosswalks.

It seeks, moreover, to engraft on the old law an exception, against property owners on "boulevards established or to be established by law," by exempting the city from liability for cleaning such streets at the general expense.

The statute in question does not bear upon any of the subjects which concern the relations of a city to the state or are authorized topics, under the constitution, for general legislation applicable to St. Louis, such, for instance, as were contained in the laws discussed in *State ex rel. v. Tolle* (1880), 71 Mo. 645; *Ewing v. Hoblitzelle* (1884), 85 Mo. 64; *State ex rel. v. Miller*, (1890), 100 Mo. 439; and in later cases in the same line.

The subject touched by the act before us is a matter strictly of muncipal regulation, and the terms of the enactment clearly disclose that the legislature so regarded it.

In *State ex rel. v. Field* (1889), 99 Mo. 356, it was said that the "matter of assessing damages and benefits for grading and regrading streets naturally falls within the domain of municipal government." And the matter of assessing special taxes for street construction, and of imposing certain other charges (in regard to street cleaning) upon the general revenue of such cities, belong undoubtedly to the same field of mere local government.

We therefore first consider whether the act of 1893 accords with the provisions of the constitution

(article 9), touching the organization and classification of cities and towns, with respect of their charter powers, viz:

Sec. 7. "The general assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. The general assembly shall also make provisions, by general law, whereby any city, town or village, existing by virtue of any special or local law, may elect to become subject to, and be governed by, the general laws relating to such corporations."

The legislature by sections 972, 973, 974 and 975 (R. S. 1889) has classified the cities of Missouri thus:

All cities of one hundred thousand inhabitants, or more, are cities of the first class.

All cities of thirty thousand and less than one hundred thousand are cities of the second class.

All cities containing three thousand and less than thirty thousand inhabitants are cities of the third class.

All cities containing five hundred and less than three thousand inhabitants are cities of the fourth class.

Another group (not included in these four classes) consists of cities, etc., organized under special charters, existing when the constitution took effect. By clear implication from the last sentence of section 7, above given, those municipalities are authorized to continue corporate existence under their special charters, and the legislature has provided a mode in which they may elect

to become subject to the general laws, under the classification of the constitution (R. S. 1889, sec. 977).

It has been held by the supreme court that the charters of cities, existing under laws passed prior to the constitution of 1875, may be amended by general laws, based on population, applicable to those cities. *Rutherford v. Heddens* (1884), 82 Mo. 388; *Rutherford v. Hamilton* (1889), 97 Mo. 543; *Kelly v. Meeks* (1885), 87 Mo. 396.

But those rulings have no proper application to cities or towns organized under laws enacted in pursuance of the present constitution.

In respect of city charters in force when the constitution was adopted, the decisions above cited hold that amendments thereto may be made by general law, and that a law referring to them by population is a general law.

But as to any city organized under the classification directed by the new constitution, it is not alone sufficient that an amending law be a general one (as the laws discussed in the two Rutherford cases were held to be). Such amendment must not only be by general law, but that law must also conform to the classification of cities, which that section of the constitution requires as to those cities, organized since its adoption.

No change of strictly corporate powers, in cities incorporated under the laws authorized by the constitution of 1875, can be sustained merely because such laws are general in form, as in the Rutherford cases. Such laws must also comply in other respects with the demands of section 7.

The number of classes of cities and towns, for whose organization the legislature "shall provide," is limited to four; and any general law conferring strictly charter powers upon a city, under the present organic law, must be so framed as "that all such

municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."

We now have a general law regulating municipal government in cities of the first class (containing one hundred thousand inhabitants or more); and it is noteworthy that the exact provisions of the St. Louis charter, limiting the extent of assessment for street improvements, which the law of 1893 aims to repeal, appears in the charter of cities of the first class, as section 1140 (R. S. 1889).

If the charter of St. Louis is repealed by the legislation of 1893, so also is repealed the like provision of the charter of cities of the first class. It is this obvious result which renders the act of 1893, in my opinion, void and of no effect.

Assuming the act in question to be a general law, it plainly adds a new and additional class to those now defined in the general statute regulating the powers and government of cities of the first class.

The new class of cities, created by this act of 1893, is to have a population of three hundred thousand or over; and the powers of that class are to be different from those of other cities of the first class. The cities of the first class are thus divided into two classes; the one, with the powers defined by the general law on that subject (sections 984 to 1236 inclusive, R. S. 1889); the other with the same powers as amended and enlarged by the act before us.

So that if this act were the law, there would be a direct breach of the constitutional command, that all "municipal corporations of the same class shall possess the same powers and be subject to the same restrictions," as well as of the other mandate that "the number of such classes shall not exceed four."

The statute in relation to cities of the first class

has been in force for many years, and any municipality of requisite population may elect to come within its benefits. It is a general law applicable to any city that may, in time, choose to accept its terms.

It is not competent, under the organic law, for the legislature to subdivide the first class by creating another within it, by general law, and still less by a special law, which would also be obnoxious to other provisions of the state charter.

The principle involved in this ruling has lately been declared in a neighboring state whose organic law provides that the general assembly may "classify the counties by population into not more than three classes, and regulate the fees" (of local officers) "according to class." Const., Ill., 1870, art. 10, sec. 12.

It is there held that the subdivision of one of the classes (already established), so as to make two classes of one of the original three, would be a violation of the constitution and utterly void. *People ex rel. v. Gaulter* (1894), 149 Ill. 39.

As illustrating the same principle applied to different constitutional language, see *Sanders v. Seehorn* (1893), 98 Cal. 227; *Singleton v. Eureka Co.* (1894), 35 Pac. Rep. (Nev.) 833.

But that proposition is measurably clear in Missouri without the citation of authority, if the language of our constitution is to be held mandatory on this subject. We think it must be so held, and that it is obligatory upon the legislative department.

Every reasonable intendment should be made to uphold an act of the general assembly; but if it clearly appears to be in conflict with the organic law, our duty demands that we so declare, notwithstanding our respect for the other branches of the state government.

2. But let us next inquire whether this act of 1893 is entitled to be regarded as a general law. If

not, it must be held void on that account, since it is written that:

"The general assembly shall not pass any local or special law;"   *   *   *   "regulating the affairs of counties, cities," etc., or "incorporating cities, towns or villages, or changing their charters." (Art. 3, sec. 53, Const. 1875).

The act groups cities of three hundred thousand inhabitants, or over, as municipalities for the purpose of providing that the whole cost of paving, etc., of all streets, etc., shall be charged upon the adjoining property as a special tax, etc.

It seems to be supposed that, because the act has a caption applying it to cities of a certain population that it necessarily is to be adjudged a general law. That supposition is by no means correct.

It is said in *State ex rel. v. Miller* (1890), 100 Mo. 448, (referring to classification by population) that "to make such a law general, there must be some distinguishing peculiarity which gives rise to a *necessity* for the law as to the designated class. A mere classification for the purpose of legislation without regard to such *necessity*, is simply special legislation of the most pernicious character, and is condemned by the constitution."

In that decision the court approved the ruling of Chief Justice BEASLEY, in *State ex rel. v. Hammer* (1880), 42 N. J. L. 440, in which it was declared that "there must be substantial distinction, having a reference to the subject-matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded. The marks of distinction on which the classification is founded must be such, in the nature of things, as will, in some reasonable degree, at least, account for or justify the restriction of the legislation."

The courts of last resort in that state have in recent years enforced with much vigor, the principles thus announced, and in so doing have declared a number of statutes void, though bearing the outward semblance of validity. We mention but a few, types of many others.

In *Board of Freeholders v. Buck* (1886), 49 N. J. L. 228, "an act to make certain roads," * * * "county roads, and to provide for the payment of the expenses of constructing by the county," etc., was held void because it could never be applied to but one county.

In *Long Branch v. Sloane* (1887), 49 N. J. L. 356, a supplement to an act for the formation of borough governments was adjudged unconstitutional because its obvious practical effect was to make a classification of municipalities for purposes of local government without any real ground therefor, other than the legislative will, and hence the law was held local or special in nature.

See also, in that state, *Coutieri v. New Brunswick* (1882), 44 N. J. L. 58; *Hammer v. State ex rel.* (1882), 44 N. J. L. 667; *Pierson v. O'Connor* (1891), 54 N. J. L. 36; *State ex rel. v. Orange* (1892), 25 Atl. Rep. 268; *State ex rel. v. Trenton* (1892), 25 Atl. Rep. 113.

In Pennsylvania, since *Wheeler v. Philadelphia* (1875), 77 Pa. St. 338 (in which the theory that classification of cities by population was general legislation, received its first strong indorsement), there has been an extraordinary record of special legislation, most of it feebly disguised.

In *Perkins v. Philadelphia* (1893), 156 Pa. St. 565, some particulars are given on that subject. We will mention here only the statement by one of the judges in that case, that, since the new constitution went into effect, one hundred bills have been vetoed in that state

because special or local in nature, and thirty-three were held unconstitutional by the courts, most of them for the same reason.

The ease with which the constitutional prohibitions against special legislation were evaded under the early rulings gave great encouragement to those who desired to follow the old tracks, notwithstanding the warning of the people to the contrary expressed in the most solemn form.

But it was not long before startling illustrations of classification "run mad," as one judge called it (*Commonwealth ex rel. v. Patton*, 88 Pa. St. 258), led the courts to evolve the rule, which has been above quoted, to determine the merits of any classification which may be adopted.

In our state the question whether a general law could be made applicable where a special law has been enacted, was formerly held (by a divided court), under the constitution of 1865, to be one for the legislature only. *State ex rel. v. County Court* (1872), 50 Mo. 317.

But the constitution of 1875, with evident reference to that ruling, expressly declared that the question is a judicial one to be determined without regard to any legislative declaration on that subject. Art. 4, sec. 53.

It is hence the duty of this court, under the constitution, to determine whether a law is general or special in its character.

That particular subjects may be properly dealt with, by laws applying to all who fall within their purview, goes without saying. Thus, statutes applicable to railroads (*Perkins v. Railroad*, 1891, 103 Mo. 56), insurance companies (*Equitable, etc., Society v. Clements*, 1891, 140 U. S. 226), and many lines of business (*Luther v. Saylor*, 1880, 8 Mo. App. 424; *Durant v. Mining Co.*, 1889, 97 Mo. 62) have been upheld.

Classification of this sort is natural and reasonable,

and properly belongs to the exercise of legislative discretion.   It is only where the classification adopted carries on its face the proof that it is a mere cover for legislation intended to be special or local that the courts are warranted in declaring it void.

The act now under review, it is true, recites that "in all cities   *   *   *   which now have or may hereafter have a population of three hundred thousand inhabitants or over, the whole cost of paving," etc., "shall be charged upon the property adjoining such improvement as a special tax;" but it then proceeds to declare that the special tax shall be "levied, collected and paid in the manner *now provided* by law or charter of said cities for the levy, collection and payment of special tax bills for the street improvements in said cities." (The italics are ours).

This peculiar language is the slight blemish in the veneering which discloses the real character of the material forming the substance of the act.   It makes plain the purpose in view.

As the petition alleges and the demurrer admits there is but one city in Missouri of three hundred thousand inhabitants or more, in which a mode is "now provided by law or charter," "for the levy, collection and payment of special tax bills for the street improvements in said cities."   That city is St. Louis; and the use of those terms in the act authorizes the court to notice officially the obvious truth that the intent of the supposed law is merely to change and amend the charter of that city, in the particular indicated.

Even if the language may properly be construed as applying to other cities, now incorporated but which might hereafter reach the stated population, yet the words above quoted plainly confine its effect to existing cities only.   The act could never reach any cities hereafter incorporated which might attain the required

size, since the mode of levy and collection of the tax must be that "now provided by law or charter of such cities." Hence, even if so viewed, the act is essentially special in its character.

Such legislation has been quite generally denounced as vicious, because special, both by our own court and others of last resort.

The leading case of *State ex rel. v. Herrmann* (1882), 75 Mo. 340, is directly to the point, and decisive of that at bar. The act in regard to the St. Louis notaries was then held special, because, though general in form, it applied only to those holding commissions dated prior to the passage of the act.

In *State ex rel. v. County Court* (1886), 89 Mo. 237, Judge SHERWOOD, speaking for the court, and holding the act then in question unconstitutional and void, said: "The first section, just quoted, shows that it was designed to operate in the *present* and on *an existing state of facts;*" and consequently, it might as well have mentioned Jackson county by name.

In other states the same principle has been enunciated and applied with firmness so frequently that it must be regarded as settled law, in states having constitutional provisions similar to ours in regard to special legislation.

See, on that point, in addition to cases already mentioned, *Edmonds v. Herbrandson* (1891), 2 N. Dak. 270; *Daugherty v. Austin* (1892), 94 Cal. 601; *Denver v. Spokane Falls* (1893), 34 Pac. Rep. (Wash.) 926; *County Com'rs v. Rosche* (1893), 33 N. E. Rep. (Ohio) 408; *Safe Deposit, etc., Co. v. Fricke* (1893), 152 Pa. St. 231; *In re Extension, etc., of Denver* (1893), 18 Col. 288; (32 Pac. Rep. 615).

We hence conclude that the act is special in its operation and effect. We think it was obviously so intended, and that the intent has not been sufficiently

concealed to prevent its disclosure. That intent crops out in the part of the act already indicated; but, thus exhibited, the intent pervades the whole enactment, and stamps it as a fatal deviation from the fundamental law. *State ex rel. v. Com'rs* (1856), 5 Ohio St. 497; *Slauson v. Racine* (1861), 13 Wis. 398; *Campau v. Detroit* (1866), 14 Mich. 276; *State ex rel. v. Dousman* (1871), 28 Wis. 541; *Jones v. Jones* (1887), 104 N. Y. 234.

We hold that the act in question is of no legal validity for the reasons already given, which render it unnecessary to consider any other points of objection that have been urged.

The judgment is reversed, and the trial court is directed to overrule the demurrer to the plaintiff's petition. Judges BRACE and GANTT concur in all parts of this opinion. BLACK, C. J., and MACFARLANE, J., concur in the result on the point discussed in the second paragraph. Judges SHERWOOD and BURGESS dissent.