ROBERT J. BOYD PAVING & CONTRACTING CO. v. WARD.

(Circuit Court of Appeals, Eighth Circuit.    January 3, 1898.)

No. 941.

1. CONSTITUTION PROHIBITS GENERAL LAW.
    Article 9, § 7, Const. Mo., forbids the grant of different powers to, and the imposition of different restrictions upon, members of the same class of cities by general as well as by special law.

2. STATUTES—CONSTRUCTION.
    It is always competent to consider the consequences of any act of a legislative assembly in order to arrive at the intention of its framers.

3. SAME.
    The fact that the representatives of the people made no exception to a provision of their constitution raises the conclusive presumption that they intended to make none, and the courts may not enact one.

4. UNCONSTITUTIONAL LAW—SUSPENSION OF OPERATION.

A law which would violate the provisions of a section of the constitution if given its predestined effect by the act of the legislature itself cannot escape the ban of the constitution by a suspension of its operative force until the happening of some future event or contingency, such as an acceptance of its provisions by a vote of a municipality. The legislature cannot do by indirection what it cannot do directly.

5. SAME—SPECIAL LEGISLATION—CLASSIFICATION OF CITIES.

The Missouri constitution requires the organization of all cities into not exceeding four classes, and declares that the powers of each class shall be defined by general laws, so that all of the same class "shall possess the same powers and be subject to the same restrictions." Article 9, § 7. Four classes were accordingly created by general laws, and those of the fourth class had no power to assess the cost of sewers on property specially benefited. By the act of March 18, 1893, cities of either the third or fourth class were authorized, on a vote of the inhabitants accepting the provisions of the act, to construct sewers, and charge the cost on property benefited. *Held*, that this act was unconstitutional, since, on its adoption by a city of the fourth class, that city would possess powers denied to others of the same class. 79 Fed. 390, affirmed.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

The appellee, Hugh C. Ward, was the receiver of the property of a partnership appointed by the court below in a suit for its dissolution. He exhibited an ancillary bill in that court to remove a cloud upon the title to certain portions of the real estate in his possession as such receiver, which had been created by the issue and delivery by the city of Westport, in the state of Missouri, to the appellant, the Robert J. Boyd Paving & Contracting Company, of tax bills, under an act of the general assembly of Missouri, which the appellee insisted was void because it was passed in violation of a certain provision of the constitution of that state. The appellant answered, and upon the bill and answer the court below entered a decree for the appellee (79 Fed. 390), which is challenged by this appeal.

Daniel B. Holmes (L. C. Krauthoff, on the brief), for appellant.
Wash Adams (Hugh C. Ward, on the brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

This case presents but a single question, and that is whether or not the act 'of the general assembly of the state of Missouri concerning drains and sewers for cities, which was approved on March 18, 1893 (Sess. Laws Mo. 1893, p. 101), violates section 7, art. 9, of the constitution of that state, which reads:

"The general assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."

When the act of 1893 was passed, the general assembly had already complied with this provision of the constitution. It had provided by general laws for the organization and classification of cities and towns

in that state, had divided them into four classes, and had defined the power of each class, so that all these municipal corporations of the same class possessed the same powers, and were subject to the same restrictions. Sess. Laws Mo. 1877, pp. 42, 48, 79, 101, 150, 158, 174; Rev. St. Mo. 1879, § 4897. Under these general laws none of the cities of the fourth class, to which the city of Westport belonged, had the power to assess the cost of the construction of sewers upon the property specially benefited by the making of such an improvement, although, under the general welfare clause of their charters, the cities of this class probably had authority to construct sewers as well as waterworks at the expense of all the taxpayers of their respective cities. Aurora Water Co. v. City of Aurora, 129 Mo. 540, 575, 31 S. W. 946. The act of 1893 provides that "in every city in this state having a special charter, which now or hereafter contains more than two thousand and less than thirty thousand inhabitants, and in every city in this state of either the third class or of the fourth class, the acting municipal authorities thereof, upon a vote by ballot of two-thirds of the qualified voters of such city, voting at an election held for that purpose, in favor of adopting the provisions of this act, shall have power by ordinance" (Acts 1893, p. 101) to acquire by purchase or condemnation the right of way for sewers, to construct such sewers, to charge their cost upon that portion of the property in the city which they deem to be benefited thereby, to attach to each lot so thought to be benefited a lien for its proportion of the cost of the sewers, and to issue tax bills upon such lots which authorize their holders, if they are not paid, to foreclose such liens, and thereby to deprive the owners of their property. Two-thirds of the qualified voters of the city of Westport voted in favor of adopting the provisions of this act at an election held for that purpose, and, if this law is valid, the municipal authorities of that city acquired the power to construct sewers at the expense of the owners of the property therein which they deemed to be benefited thereby. There are many other cities of the fourth class in the state of Missouri whose municipal authorities have not acquired this power, because two-thirds of their voters have never voted in favor of adopting the provisions of this law. The result is that, under the act of 1893, if it can be sustained, a municipal power has been vested in the city authorities of Westport which has not been conferred upon the municipal authorities of many other cities of its class, and the question is whether a law which has this effect defines the power of this class of cities "so that all such municipal corporations of the same class shall possess the same powers, and be subject to the same restrictions," as required by section 7, art. 9, of this constitution. It is conceded on all hands that if the general assembly had, by the terms of the act of 1893, given to that law the effect which it now has, if that assembly had directly conferred upon the city of Westport this power, which that city claims now to have acquired, and had failed to bestow the same power upon other cities of its class, the act would have been a plain violation of the section of the constitution under consideration, and for that reason void; so that, when we examine more closely and analyze more carefully the issue before us, we discover that the real question is: May a law which would be a violation of this constitutional provision, and therefore void if given

its necessary effect by the force of its own terms, escape the ban of the constitution by an entire suspension of that effect until the happening of a future event or contingency? The answer to this question will necessarily determine this case, and render the consideration and decision of many others which have been exhaustively discussed in the able arguments which have been presented to us unnecessary and immaterial.

It is contended, for instance, in support of this law, that no act of the general assembly could violate section 7, art. 9, of the constitution, unless it was a special law, and fell under the ban of section 53, art. 4, of the same constitution, also, which provides that "the general assembly shall not pass any local or special law * * * regulating the affairs of counties, cities, townships, wards or school districts, * * * incorporating cities, towns or villages, or changing their charters"; and many cases have been cited to show that the act of 1893 is not a special law. The argument is, the act of 1893 cannot violate section 7 unless it is a special law. It is not a special law, therefore it does not violate section 7. It is unnecessary for us to review the vast array of authorities presented in support of the minor premise, because we are unable to concede the soundness of the major premise of this syllogism. A law which suspended within the reach of every city of the fourth class every municipal power which it is competent for the general assembly to confer, and provided that each city might have any of these powers which it specified and elected by a majority vote of its citizens to adopt, would doubtless be, in form, a general law; but it would certainly be a palpable violation of section 7. An act which submitted to the choice of every city of the fourth class a dozen municipal charters, each of which conferred different powers from any of the others, and provided that each city of that class might have the powers bestowed by any one of these charters upon condition that it would specify and accept the charter of its choice by a vote of the majority of its qualified electors, would undoubtedly be a general law in form, but would not define the powers of any of the cities of that class, so that all such municipal corporations of the same class should possess the same powers, and be subject to the same restrictions. General laws of this character would naturally result in the possession of different powers subject to different limitations by municipal corporations of the same class, and it was undoubtedly to prevent this very contingency that the framers of this constitution added to the prohibition of special or local laws regulating the affairs of cities, incorporating cities, and changing their charters, contained in section 53 of article 4, the mandate and prohibition of section 7. The provisions of section 53 required the powers of cities to be conferred by general laws. But section 7 went further, and commanded that they should be so bestowed and defined that all of the same class should always have the same powers, and be subject to the same limitations. This is the interpretation of these provisions of section 7 which has been adopted by the supreme court of Missouri, whose decision upon that question is controlling in this court. Madden v. Lancaster Co., 27 U. S. App. 528, 535, 536, 12 C. C. A. 566, 570, and 65 Fed. 188, 192. In Murnane v. St. Louis, 123 Mo. 479, 489, 27 S. W. 711, Judge Barclay, while deliver-

ing the opinion of that court, said: "Any general law conferring strictly charter powers upon a city, under the present organic law, must be so framed as 'that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions;'" and in Kansas City v. Scarritt, 127 Mo. 642, 652, 29 S. W. 847, and 30 S. W. 111, the same learned jurist, speaking for the court of the amendment of a city charter, said: "Legislation for such amendment, regarding strictly local concerns, must not only be general in form, to comply with the demands of other parts of the constitution (article 4, § 53), but it must likewise conform to the classification of cities, and of charter powers, prescribed by section 7 of article 9." Thus it appears that a general as well as a special law may violate the provisions of section 7, and that the question whether the act of 1893 is a general or a special law is immaterial, so that we are compelled to decline to follow counsel through their interesting and exhaustive discussion of that issue.　The question is not whether this law is general or special, but whether or not it violates section 7.

Another proposition advanced in support of this act which is pressed upon us with great zeal is that its local option feature was not an unlawful delegation of legislative power; that after the passage of the act, and before any city exercised its option, all the cities of the fourth class had the same powers, and were subject to the same restrictions; and that the term "adopting the provisions of this act" meant nothing more than accepting its privileges.　We do not propose to test the constitutionality of this law by its verbiage, but by its substance and effect.　Its terms are only important as they are an index to the intent and purpose of its makers.　So far as the term "adopting the provisions of this act" indicates more clearly than such an expression as "accepting the privileges of this act" the intention of the legislature that this law should never have any life or effect unless and until the voters of some city adopted it, and their further purpose that whenever any vigor and efficacy were injected into it it should evade or violate the provisions of section 7, this expression has pregnant significance.　But, in our opinion, the constitutionality of this act depends upon no such narrow issue as the use of one or the other of these expressions.　The serious objections to it are broader, and lie deeper.　They rest in the effect it produced and in the evident intent which inspired it.

Nor is it easy for us to perceive how the inquiry whether or not the local option feature of this law constitutes an unlawful delegation of legislative power is anything more than an academic question in this case.　The general rule is well settled that it is always competent for a court to consider the consequences of any act of the general assembly in order to arrive at the intention of its framers.　Lamar Water & Electric Light Co. v. City of Lamar, 128 Mo. 188, 210, 26 S. W. 1025 and 31 S. W. 756.　Unless we grossly mistake the meaning of language which seems to us to be too terse, apt, and clear to require construction, section 7 of article 9 of the constitution of Missouri makes the possible consequences of a law affecting the powers of municipal corporations the sole test of its validity.　It reads: "The number of each class shall not exceed four; and the power of each class shall be defined

by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." The key to the interpretation of this mandate is the last clause of the sentence which commences with the words "so that," and, if the English language has terms which more clearly express the thought that the laws which define the power of any class of municipal corporations must be such that under them all such corporations of the same class shall possess the same powers, and be subject to the same restrictions, and that they may not by any possibility have dissimilar powers, or be subject to dissimilar restrictions, they certainly have not occurred to us. Murnane v. City of St. Louis, 123 Mo. 479, 489, 27 S. W. 711; Kansas City v. Scarritt, 127 Mo. 642, 652, 29 S. W. 845, and 30 S. W. 111. Now, if the passage of the act of 1893 has had any effect, it has produced the forbidden consequence. If this law is valid, the city of Westport has acquired the power to construct sewers at the expense of the property in that city which its municipal authorities deemed benefited, and other cities of the same class have not obtained that power; cities of the fourth class possess dissimilar powers, and are subject to unlike restrictions. How can it be material, then, whether the enactment of this law has produced this result with or without the delegation of legislative authority. It is certain that the prohibited result has been reached. There is no doubt that the enactment of this law was the primary cause without which the forbidden consequence could never have been produced; and, whether the general assembly brought this result about with or without the attempted delegation of lawmaking power, the act which produced it must be alike obnoxious to the mandate and prohibition of section 7.

Counsel for the appellant endeavor to support the proposition that this law is valid because every city of the fourth class had the same powers, and was subject to the same restrictions between the time of its passage and the time when it first had operative force by the vote of the citizens of Westport by a review of authorities which have sustained local option liquor laws (State v. Pond, 93 Mo. 606, 6 S. W. 469; Groesch v. State, 42 Ind. 547; Paul v. Gloucester Co., 50 N. J. Law, 585, 15 Atl. 272; State v. Gerhardt [Ind. Sup.] 44 N. E. 469; State v. Forkner [Iowa] 62 N. W. 772), laws regulating the relations of the citizens to the state (Dunne v. Railway Co., 131 Mo. 1, 32 S. W. 641; State v. Nelson, 52 Ohio St. 88, 39 N. E. 22), enabling acts and acts prescribing the method of the exercise of powers granted to municipalities (Opinion of Supreme Judges on Township Organization Law, 55 Mo. 295; State v. Wilcox, 45 Mo. 458; Miles v. Freeholders, 52 N. J. Law, 302, 19 Atl. 718; Fellows v. Walkers, 39 Fed. 651; Water Co. v. Neosho, 136 Mo. 498, 38 S. W. 89; In re Cleveland, 52 N. J. Law, 188, 19 Atl. 17; Board of Law Library Trustees of Orange Co. v. Board of Sup'rs of Orange Co., 99 Cal. 571, 34 Pac. 244; Hellman v. Shoulters, 114 Cal. 136, 44 Pac. 915, and 45 Pac. 1057; Brown v. Holland [Ky.] 30 S. W. 629). A careful examination of each of these cases and many others, however, has failed to convince us of the validity of this act. Only one of the cases cited—Brown v. Holland, supra—involved the constitutionality of a law under a provision identical with that under consideration. In that case the constitution of Kentucky con-

tained a declaration that the mayor of any city might "be appointed or elected as provided by law," and a statute which provided that the mayor of any city of the fourth class might be elected or appointed by the council, as should be provided by ordinance (Sess. Laws Ky. 1891–93, c. 241, § 3), was held to be no violation of a provision identical with that contained in section 7, because, in the language of the court, "a mayor is equally a mayor, with the same powers, and subject to the same limitations, whether chosen by a vote of the people of the city at large, or whether selected or chosen by the board of council. And certainly, it seems to us, the powers and restrictions therein of all municipal corporations may be defined and provided for by general laws, whether the office of mayor be filled in the one way of the other." Whatever may be thought of the decision in this case, the reason on which the court based it fully recognizes the identity of the municipal powers and restrictions of all cities of the same class as essential to the validity, under this clause of the constitution, of any law which affects them. There is no doubt of the power of a legislature, in the absence of such a limitation as that contained in section 7, to pass a law to take effect on the happening of a future contingency, or that such a contingency may be a vote of the people of a specified locality. This section in no way limits the power of the general assembly to exercise by the passage of local option laws the police powers of the state in the prohibition or regulation of the liquor traffic, nor its power to legislate upon subjects which involve the relations of the citizens or the cities to the state, such as the drawing of juries and the collection of the revenues of the state, nor its power to pass enabling acts for the organization of towns and school districts; and authorities involving the constitutionality of laws of these classes give but little aid in the determination of the question here in hand. Section 7 only limits the authority of the general assembly to deal with those powers of cities which are strictly corporate, and which concern their internal municipal government alone. Kansas City v. Scarritt, 127 Mo. 642, 655, 29 S. W. 845, and 30 S. W. 111. Nor does it, in our opinion, forbid the general assembly to pass laws which dictate the method in which the powers it confers shall be exercised, such as acts which describe the votes which shall be taken, and the ordinances which shall be passed, in the exercise of municipal powers to contract for waterworks, gasworks, and sewers, and to issue bonds, provided always the powers themselves are defined and bestowed upon all the municipalities of the same class to the same extent and at the same time.

The act of 1893, however, falls under none of these categories. It attempts to confer strictly corporate municipal powers. The two-thirds vote by which its provisions may be adopted constitutes no part of the exercise of the powers it attempts to bestow. The entire exercise of those powers is committed to the acting municipal authorities of the city. The power to determine whether or not these authorities shall have those powers is committed to another agency,— to the qualified voters of the city. The first section of the act provides that, "when the result of such election shall be ascertained, the same shall be declared by the mayor of such city by proclamation,

85 F.—3

which shall be spread upon the records of such city, and all courts shall take judicial notice of such election and of the results thereof." Acts 1893, p. 101. For what purpose must courts take judicial notice of this election and its results? For one only, and that is to determine whether or not the city which held it has acquired the power to construct sewers under the act. And yet, if the result which that election produces had been declared by the general assembly in the law itself to be its effect it would have been void. The question this case presents is not whether the local option feature avoids a law otherwise valid, but whether it validates a law otherwise void.

The proposition that this act is valid because it defined and granted the same powers to all the cities of the fourth class until it was adopted by one of them, stripped of the ingenious and persuasive arguments which the learning and ability of counsel have woven about it, is nothing more than the averment that it is valid because it created no diversity of powers and restrictions before it had operative force and effect. It had no effect upon the powers of the cities of the fourth class to construct sewers until some one of them had adopted it. If no one of them had ever adopted it, it never would have created any diversity of powers, or had any effect upon those powers. But the moment the breath of life was breathed into it by its adoption by the city of Westport, the moment it had any effect whatever upon the powers of the cities of the fourth class to construct sewers, in that moment it created that diversity of powers and restrictions which the mandate of section 7 required the general assembly to prevent, and the question recurs: May a law which would violate this provision of the constitution if the general assembly gave it its predestined effect by the force of its own terms escape its ban by an entire suspension of its operative force until the happening of some future event or contingency? In other words, may a legislature do by indirection that which the organic law forbids it to do directly? May it make an unconstitutional law constitutional by suspending its operative force and effect until some chosen agent elects to give it life? Does the provision of the constitution under consideration mean that the power of each class of municipalities shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers, and be subject to the same restrictions, before those laws go into operative force and effect only, or while they are in force and operation as well? An interpretation of section 7 that it requires the general assembly to provide by general laws that the powers and restrictions of municipal corporations of the same class shall be identical only before, and never during, their effective operation, renders that provision of the section nugatory, and flies in the teeth of the maxim that "all the words of a law must have effect, rather than that part should perish by construction." Knox Co. v. Morton, 32 U. S. App. 513, 518, 15 C. C. A. 671, 675, and 68 Fed. 787, 790; City of St. Louis v. Lane, 110 Mo. 254, 258, 19 S. W. 533. If the framers of this constitution had intended to ingraft upon this provision such a suicidal exception, it would have read, "The power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same pow-

ers and be subject to the same restrictions," except during the time when such laws are in operative force and effect.    It was the privilege and the duty of the chosen representatives of the people who framed this organic law to fix the terms of this mandate and prohibition, and to specify the exceptions to them if there were any.    They made no exception, and that fact raises the conclusive presumption in the judicial department of the government that they intended to make none, and by force of the same constitution prohibits the courts from enacting any, because their province is to interpret, but never to enact or to modify, the constitution or the laws.    Madden v. Lancaster Co., 27 U. S. App. 528, 540, 12 C. C. A. 566, 573, and 65 Fed. 188, 195; Morgan v. City of Des Moines, 19 U. S. App. 593, 8 C. C. A. 569, and 60 Fed. 208; McIver v. Ragan, 2 Wheat. 25, 29; Bank v. Dalton, 9 How. 522, 528; Vance v. Vance, 108 U. S. 514, 521, 2 Sup. Ct. 854.

Here, also is the answer to the argument that, since the powers and restrictions of all the members of the fourth class of municipal corporations would be the same if none of them or if all of them adopted the provisions of this law, the act could not be made unconstitutional by its adoption by some and its neglect by others.    The provision of section 7 is not that the power of each class shall be defined by general laws, "so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions," except in cases in which some of these municipal corporations shall adopt those laws and some shall not.    It contains no such exception.    It seems to have been framed and adopted with the deliberate intention to prevent the very possibility of diversity of powers.    It is broad, clear, and without exception, and it commands the general assembly in unmistakable terms to define the powers of municipal corporations so that those of the same class shall possess at all times and under all circumstances the same powers and be subject to the same restrictions.    The act of 1893 not only failed to avert, but it actually produced, the diversity of powers and restrictions among municipal corporations of the fourth class which this provision of the constitution required the general assembly to prevent.    Moreover, this law fails to define the power of the members of the fourth class of municipal corporations relative to the subject of which it treats as required by the provision of section 7 under consideration.    That section requires this power to be defined by the law.    To define is "to fix, establish, or prescribe authoritatively."    2 Cent. Dict. p. 1503. "Define," 2.    This law leaves the voters of the various municipalities to "fix, establish, or prescribe authoritatively" what power their respective municipal authorities shall have under it, and constitutes the records of their respective cities the only evidence of the extent of the power vested in them under this law.    To state these facts is to demonstrate the proposition that here is no definition by general law of the power of municipal corporations of the fourth class to construct sewers at the expense of the property benefited, for an examination of the law gives no information whether any of the members of that class have adopted its provisions or acquired the powers it offers.    It does not seem doubtful to us that an act which offers municipal power to the members of a class of municipal corporations

which shall adopt its provisions only, and so necessarily fails to define the power which any one of them shall possess under it, which does not avert, but actually produces, that diversity of powers among the members of the same class which the mandate of section 7 required the general assembly to prevent, must be obnoxious to the provisions of that section. This view is not without the support of eminent authority. While the decisions of the supreme court of Missouri in Murnane v. St. Louis, 123 Mo. 479, 486, 27 S. W. 711, and Kansas City v. Scarritt, 127 Mo. 642, 650, 29 S. W. 845, and 30 S. W. 111, do not decide the precise question before us, they point unerringly to the result which we have reached. The provision contained in the constitutions of some of the states to the effect that laws conferring municipal powers shall be general and uniform in their operation throughout the state, is strikingly analogous to the command that such powers shall be defined by general laws, so that all municipal corporations of the same class shall have the same powers, and be subject to the same restrictions; and decisions construing the former provision are very persuasive in the interpretation of the latter. The constitution of the state of Minnesota prohibited the passage of any local or special law regulating the affairs of towns, or incorporating, erecting, or changing the lines of any county or city, and required the legislature to provide general laws upon these subjects, which should "be of uniform operation throughout the state." Const. Minn. art. 4, §§ 33, 34. The legislature of that state passed an act providing for an engineering department, a commissioner of public works, and a board of park commissioners in cities of more than 100,000 inhabitants, and prescribing their powers and duties. One of the provisions of this law was:

"This act shall be enforced in any city whenever the common council of any such city embraced within its provisions shall adopt the same by a majority vote of all the members." Sess. Laws Minn. 1895, c. 228, § 146.

The supreme court of Minnesota held this law to be a violation of the constitution of the state. Judge Canty, in delivering the opinion of the court, said:

"Is such a general local option law one having a uniform operation throughout the state? How can a law which goes into effect in one city, and does not go into effect in another city of the same class, have a uniform operation throughout the state? It seems to us that the legislature cannot bring about diverse charter powers in different cities by enacting any such local option law which may result in giving different cities different charter powers, unless the same result can be accomplished by a direct, unconditional law. The mere possibility that all the cities of the class may adopt the law will not save it. It must appear at the time the law is passed that it will have a uniform operation throughout the state; that is, that it will take effect in all cities of the class, and that the class is a proper one. The uniform operation of the law cannot be left to any future contingency." State v. Copeland, 69 N. W. 27, 28.

The constitution of the state of Florida provided:

"That the legislature shall not pass special·or local laws in any of the following enumerated cases; * * * regulating county, township and municipal business; regulating the election of county, township and municipal officers." Article 4, § 17.

"In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout ·the state." Article 4, § 18.

"The legislature shall establish a uniform system of county, township and municipal government." Article 4, § 21.

Prior to 1879 two classes of municipal corporations had been established in that state, consisting, respectively, of those which had and those which had not 300 registered voters. In that year the legislature of Florida passed an act authorizing radical changes in the established form of municipal government in cities having 1,600 or more registered voters, and provided therein that any city containing 1,600 or more registered voters might, by the passage of an ordinance, declare its acceptance of the act, and thereupon the changes authorized should take effect in that city on and after its next annual election. The supreme court of that state declared the act void, and said:

"The local option authorized makes it a matter of discretion with all cities containing 1,600 registered voters or more to remain in the class of cities containing 300 voters, with a municipal government prescribed for that class, or to be embraced in the class of cities containing 1,600 or more registered voters, under another and different municipal government for that class. In the event all the cities with 1,600 or more registered voters should accept this act as the law of their organization, the law might, in fact, have a uniform operation. That uniform operation, however, would be the result of chance, and not of the operation of a fixed rule prescribed by the legislature, while the constitution contemplates no such contingency. The government in each class must be the same, and such must be the result of the action of the legislature, independent of the contingency of local discretion or option in the premises. The legislature must itself, independent of acceptance by such cities, so frame its enactment that (as expressed by the supreme court of Illinois) there shall not be dissimilarity in character of organization or powers in municipalities of the same class." McConihe v. State, 17 Fla. 238, 268.

In another case the same court declared "the legislature must so act as to itself establish—First, a system of municipal government; and, second, the system must be a uniform system." State v. Stark, 18 Fla. 255, 265. Reason and authority alike constrain us to answer the crucial question in this case in the negative, and our conclusion must be that a law which would violate the provisions of section 7, art. 9, of the constitution, if the general assembly gave it its predestined effect by the force of its own terms, cannot escape its ban by a suspension of its operative force until the happening of some future event or contingency.

Counsel for the appellant have invoked with much urgency the unquestioned rule that, where the constitutionality of an act of the legislature is doubtful, the law should be sustained. The rule has no application to this case, because, after a deliberate and careful consideration of the question at issue, all doubt has disappeared from our minds, and we are bound to remember that under our form of government the people have fixed in general terms in their organic law the boundaries of the powers of its legislative, executive, and judicial departments alike, have imposed upon the judiciary the grave duty of determining when those limits have been passed, and that when the discharge of that duty shall be abandoned the fabric of constitutional government must fall, and the lives and property of the citizens must become subject to the arbitrary will of the representatives of some of the great departments of the government. The court below, in the discharge of this important duty, came to the conclusion that the gen-

eral assembly had passed beyond the limits of legislative action prescribed by the constitution of Missouri when it enacted the act of 1893. We have no doubt that its decision was right, and we must declare that the act of the general assembly of Missouri concerning sewers and drains, approved on March 18, 1893, is a violation of section 7, art. 9, of the constitution of that state, because it does not avert, but permits, and, if it were valid, would produce, that diversity of municipal powers among cities of the same class which that section commands the general assembly to prevent, and because it does not define the power of any of the municipalities of the class to which it applies relative to the subject of which it treats. The decree below must be affirmed, with costs, and it is so ordered.