Hoffheimer, J.
This is an action to recover $21,600 as liquidated damages for alleged breach of contract. Plaintiff does business as the Freeman Perfume Company and manufactures and sells at wholesale and retail certain proprietary articles. He alleges he has the sole and exclusive right to manufacture such articles and that he has a retail store where he sells his articles at a certain price, and he avers that he must sell at such prices in order to' conduct his business- on a profitable basis. He likewise sells to wholesalers and retailers. He avers that because of the excellent quality and popularity of his goods, Cora Dow Goode, a retail dealer and other retail dealers secure his merchandise for their purposes of advertising and offering same at greatly reduced prices, with a view of attracting customers from his store, and from his- other retail dealers; that they slander his preparations and prevent sales at his store as well as at those of his .other retailers.
That to protect his business-, plaintiff inaugurated a system of contracts under which he marketed his preparations to wholesale and retail dealers only who would enter into said contract with him. Under these contracts, among other provisions, the vendee was required to protect the fixed retail price and to sell at retail only, and not to sell to other retail dealers who had not entered into a like contract with the plaintiff.
This defendant, a retail dealer, entered into such contract with plaintiff and sold, in alleged direct violation of the contract, goods purchased thereunder to parties alleged to be guilty *28 of the. acts complained of, and for such alleged breach of contract plaintiff brings this action.
To this petition defendant enters a general demurrer, and the question is thereby raised as to whether, in view of the rules of the common- law against restraint of trade and the Valentine anti-trust act, this contract is legal and enforceable.
While this action is between the plaintiff vendor and -a single vendee, it concerns a contract which is confessedly a part of an arrangement or system of contracts, involving the plaintiff’s other vendees (retailers) and which system of identical agreements regulates and fixes the price and completely controls sales and sub-sales in plaintiff’s preparations, although it is contended that this is done for the purpose of benefiting plaintiff’s retained business.
Such a system as is here under consideration, however, can not but tend to a complete monopoly and, under the authorities, I can not but conclude that a system of contracts such as this, is illegal as being in general restraint of trade unless the plaintiff, because of his secret formula or proprietary articles has in some manner acquired a right—-an exclusive monopoly—identical with that of a holder of a patent or copyrighted article.
In patent and copyright cases, an exclusive monopoly arises by grace of the patent and copyright laws, in consideration for a full publication of the discovery or invention, after the expiration of an arbitrary period, and this exclusive monopoly being granted by the law (statutes) it will not be cut down, abridged or taken away by the law.
For this reason, contracts, schemes or systems of contracts similar to the one under consideration, which fix the price and control sales and sub-sales and impose other restrictions, have been upheld in numerous cases. John D. Park & Sons v. Hartman, 153 Fed., 24; Button Co. v. Specialty Co., 77 Fed., 278; Victor Talking Machine Co. v. The Fair, 123 Fed., 424; Bement v. The National Harrow Co., 186 U. S., 70.
The plaintiff contends that by analogy with the rights incident to the monopoly of patented and copyrighted articles or statutory monopoly, his rights are precisely similar because of his natural monopoly in his trade secret or proprietary article.
*29 The precise question, however, has been lately determined in John D. Park & Sons v. Hartman, supra, where it was held (Burton, Severens and Richards), that such analogy does not exist. And it may be noted also, that the lower court (Cochran, J.), which was reversed by the Sixth Circuit, came to practically the same conclusion on this proposition, although its decision went off on another point.
This same conclusion, in my judgment, appears negatively, in the' cases generally where the proposition as. to the rights under statutory monopolies .or monopolies created under- patent and copyright laws is decided.
It is clear that in the cases where the statutory monopoly is accorded a patentee, the exclusive monopoly is given as a reward because of the ultimate disclosure that must be made to the public and the consequent unrestricted use and enjoyment assured the public by the patentee’s industry and discovery.
But what reason is there for according similar rights to one who has a valuable discovery, but who fails to secure it by patent ?
Instead of possible benefit to the public his discovery and knowledge is withheld until he chooses to publish it, or until it otherwise is found out.
In the former case the public is amply justified in bestowing a reward. In the latter case, there is absolutely no occasion for it.
Rights then, that are thus acquired under statutory monopolies, are in derogation of common law and those rights can not be extended to any other persons or species of property.
It must .be borne in mind also, as Judge Burton points out (Park v. Hartman, supra), that:
“We are not dealing here with contracts which relate to the secret formula itself, but with contracts which -relate -to and affect only the traffic in the manufactured product of the secret formula.
“Freedom of traffic in that is consistent with its value and does not involve exposure of the formula. ’ ’
There is therefore no more reason for fostering by la>v a monopoly in the individual who manufactures an article of commerce under a trade secret or a proprietary article than the in *30 dividual who manufactures any article of trade or commerce other than those under a statutory monopoly.
In view of the foregoing considerations, I am wholly unable to agree with the able counsel for plaintiff in his contentions that the law applicable to patented and copyrighted' articles is equally applicable in questions of trade restraint ■ to trade secret and proprietary articles.
I hold, therefore, that this plaintiff in selling the articles manufactured solely bjf him, in undertaking to fix the price and control sales -and sub-sales, is in precisely the same situation as any other individual or manufacturer who undertakes to make contracts in restraint of trade, barring, however, the exception referred to. That is to say, like any other merchant or manufacturer, he is subject to the rules of the common law against restraints of trade and he is subject to the provisions of statutory enactments agaihst monopolies such as, in our state, the Valentine anti-trust act, or, if the trade or traffic be interstate, the Sherman anti-trust act.
Now, this plaintiff admits by brief, a “limited attempt to restrain trade in his face powder.” But he claims this attempt at restraint is justifiable in law, because partial and necessary to protect him in his retained business. Is such claim tenable?
The plaintiff contends that the restraint imposed by his system of contracts falls within the fourth class of the subdivision of restraints, suffered by the law, as pointed out by Judge-Taft, in the Addyston ease (85 Fed., 27) involving- “covenants by the buyer of property not to use the same in competition with the business retained by the seller.” And the reasonableness of the restraint is sought to be justified by general averments that the scheme of contracts was rendered necessary to enable him to carry on his retail business. But as the contract in question is confessedV identical with the contract every vendee must sign, involving the restrictions referred to, and as plaintiff himself is the sole manufacturer of the articles, in my judgment this contract or system of contracts, viewed as a whole, brings about not a partial restraint, but a complete and entire -control or general-restraint of the entire-trade in this distinct article of traffic.
*31 The public interests necessarily become injuriously affected because the price is fixed, and competition, which the law ever encourages, is everywhere stifled, the general trade in the entire article, as already pointed out, being wholly controlled. Lumber Co. v. Brooklyn Saw Mill Co., 54 App. Div., 518; U. S. v. Jellico, 46 Fed., 432; Owen v. Bryan, 77 N. E. Rep., 302, Syl. 5; Montague v. Lowry, 193 U. S., 38; Salt Co. v. Guthrie, 35 O. S., 666; State v. Standard Oil Co., 49 O. S., 137.
The public being therefore directly and injuriously affected by the arrangement, any question of reasonableness of restraint yields to that of public interest.
Public welfare is first to be considered, says Fuller, Ch. J., in Fowle v. Parke, 131 U. S. See, also, 139 U. S., 24, page 53; Finch v. Granite Co., 187 Mo., 244; Charleston v. Kanawha Co., 50 S. C. Rep., page 76.
In the last two cases, it .is shown that a restraint that affects public interests is .always unlawful however much it may be for the benefit and protection of the parties or reasonable from their standpoint.
The question of reasonableness of a restraint or restraint necessary to protect one in his own business, and partial restraint which might possibly arise, were the case confined to a single transaction or single contract, taken alone, and not confessedly part of a system, as herein involved, finds no room for consideration, where the restraint is not partial and where a system of contracts as here, discloses a general plan which though primarily designed, perhaps, to protect a retained business, nevertheless necessarily and actually results in a complete and general restraint establishing a monopoly in an entire trade rendering competition impossible, and hence injurious to the public interests. See language of Lurton, J., Park Sons v. Hartman, supra, at page 41.
It is to be noted also that in the Addyston case Judge Taft, in making the classification of restraints, upon the fourth one of which plaintiff seeks to rely, Avas not dealing with general restraints at all, but was considering covenants in partial restraint. It will be noted that the classification made by him immediately follows that part of the decision Avhere he says: *32 ‘ ‘ Covenants in partial restraint of trade are generally -upheld when they are agreements,” etc.
This distinction was evidently recognized by plaintiff’s counsel, for at page 10 of his brief he says:
“Judge Taft in this case (Addystou case) finds five cases-of partial restraints.” A restraint to be justifiable, therefore, must be both partial .and reasonable, and the classification of partial restraints as in the Addyston case has no application where the restraint, as here, is a general one. Aside from the unenforceable character of the contract at common law for the reason given, it seems to me that this system or scheme which unites the sole manufacturer, the wholesaler .and all retailers, in short, all dealers, in this oomjnon cause, scheme or purpose, wherebjr an arbitrary price is fixed and maintained, and competition in the traffic rendered impossible, effects just such a combination and monopoly as is in contravention by the Valentine anti-trust law, Revised Statutes, 4427-1, sub-sections 2-3-4.
Where a somewhat similar system was involved, it was held to be in violation of the provisions of the Federal anti-trust statute (Park v. Hartman, supra) and since our Supreme Court in State v. Buckeye Pipe Line Co., 61 O. S., 548, has said-that the provisions of that statute are not substantially different from those of Ohio, it would seem to follow that such system does violence-to the Valentine act as well., : ..
In view of the foregoing, the contract sued upon is illegal and contrary to-public policy and the law of'the land,-and therefore can not be enforced.
Demurrer sustained and petition dismissed.